**Steven GUERRA, et al., Plaintiffs,**

**v.**

**Edwin MEESE, Attorney General of the United States, et al., Defendants.**

**Civ. A. No. 85–1510.**

United States District Court, District of Columbia.

July 31, 1985.

Jane H. Aiken, Center for Applied Legal Studies, Washington, D.C., Elizabeth M. Fink, Brooklyn, N.Y., Margaret L. Ratner, Rafael Anglada-Lopez, Center for Constitutional Rights, Susan Tipograph, Resistance Law Office, New York City, Michael Deutsch, Chicago, Ill., for plaintiffs.

Michael L. Martinez, Asst. U.S. Atty., Washington, D.C., for defendants; Michael A. Stover, U.S. Parole Com'n, Chevy Chase, Md., of counsel.

## MEMORANDUM OPINION AND ORDER

BARRINGTON D. PARKER, District Judge:

In this proceeding, seven prisoners presently incarcerated in various federal correctional institutions petition this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, or alternatively, a writ in the nature of mandamus, pursuant to 28 U.S.C. § 1361. Their incarceration followed convictions and sentences for criminal contempt before trials in the District Court, Eastern District of New York. The respondents are the Attorney General of the United States, the Director of the United States Bureau of Prisons, the Chairman of the United States Parole Commission, and the wardens of the several correctional institutions where the respondents are incarcerated.

The petitioners challenge a newly promulgated Parole Commission directive applicable to parole guidelines for persons convicted of criminal contempt. They allege that the directive has the effect of denying their release on parole and extending the period of their incarceration. They charge that the actions of the Parole Commission violate the constitutional prohibition against *ex post facto* laws, their rights under the Fifth and Sixth Amendments to the Constitution and the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*

The government initially raised the question of whether venue was proper in the District of Columbia. On June 13, 1985, a motion to transfer this proceeding to the various judicial districts where each petitioner was incarcerated was denied. The petitioners were granted limited discovery and an oral hearing on the merits was held on July 18, 1985. The parties agree that there are virtually no disputed material facts and thus the Court is called upon to determine issues of law.

For the reasons set out below the Court concludes that the Parole Commission directive may not be applied to petitioners.

## I.

### BACKGROUND

The seven petitioners were convicted and sentenced for criminal contempt under 18 U.S.C. § 401. Their convictions resulted from a refusal to testify before a grand

jury. investigation of criminal terrorist activities of a Puerto Rican nationalist group, the Fuerzas Armadas de Liberacion Nacional Puertorriguena ("FALN").[1] The grand jury was convened by the United States District Court, Eastern District of New York. The petitioners claim they are activists and they refused to cooperate with the investigation and to testify because of their political, religious and moral beliefs not because they were involved or associated with criminal or terrorist activities.

Petitioners Guerra, J. Rosado, Cueto, A. Rosado, and Romero were tried together in the Eastern District of New York in February, 1983, and were convicted of criminal contempt and sentenced to three years imprisonment in June, 1983. They began serving their sentences in April, 1984.[2] Petitioner Fiallo was convicted in the Eastern District of New York in October, 1983, and was sentenced to two years imprisonment, which he began serving in June, 1984. Petitioner Miller was sentenced in April, 1984 to three years imprisonment following her conviction for criminal contempt. She began to serve her sentence in February 1985.

Petitioners are at various stages of the parole hearing appeal process.[3] Guerra is the only petitioner who has exhausted the administrative process to the United States Parole Commission. The parties represented and agreed at the July 18 hearing that all of the petitioners have had an initial hearing, while only some have pursued the parole board's decision to the intermediate appeal level, the regional parole board.

### A.

Petitioners challenge a Parole Commission directive applied to the parole guidelines for an individual convicted of criminal contempt. The guideline for criminal contempt is found in 28 C.F.R. § 2.20 (chapter six, subchapter B, 618(a)).[4] However, an additional directive formulated by the United States Parole Commission was appended to 28 C.F.R. § 220, 618(a). That directive, known as a "Notes and Procedures" (hereinafter "Notes and Procedures provision"), is found in the 1984 United States Parole Commission Rules and Procedures Manual, effective October 1, 1984. It provides:

> [[*Notes and Procedures.* 'Criminal Contempt' refers to conduct under 18 U.S.C. 402 (punishable by up to six months). If a criminal sentence of more than one year is imposed under 18 U.S.C. 401 for refusal to testify concerning a criminal offense, such conduct normally should be graded as if 'accessory after the fact.']]

The Notes and Procedures provision to 618(a) was formulated internally by the Parole Commission and became effective April 1, 1984, after at least five of the petitioners had been sentenced. It was not submitted for public comment nor was it published in the Federal Register. Petitioners contend that but for this additional provision five of the petitioners would have been paroled as of this date.

Parole guidelines encompass two components: a salient factor score which determines the individual risk of parole violations and a severity offense score based on the seriousness of the offense committed. It is the latter factor, the severity offense scores for various offenses, which are set forth in 28 C.F.R. § 2.20. Petitioners contend that the Notes and Procedures provision of 28 C.F.R. § 2.20, 618(a) unjustifiably and unconstitutionally increases the severity of the offense of criminal contempt such that their term of imprisonment is unconstitutionally prolonged.

---

**1.** Petitioners claim that their refusal to cooperate stemmed from political, moral, and religious reasons.

**2.** Their conviction was affirmed by the Second Circuit in *United States v. Rosado,* 728 F.2d 89 (2d Cir.1984). That opinion fully develops the factual background of those five convictions.

**3.** The government has appended to its response to the show cause order some parole documents relating to each petitioner. *See* Exhibits A–L to Government's Response.

**4.** 28 C.F.R. § 2.20, 618(a) states:
   Criminal contempt where imposed in connection with a prisoner serving a sentence for another offense, add $\leq$ 6 months to the guidelines otherwise appropriate.

They argue that the severity of their offense, criminal contempt, should be rated in Category Three, the category for misprison of felony, 28 C.F.R. § 2.20, 614. With a high salient factor score, a prisoner whose severity offense score is graded in Category Three will ordinarily be paroled after serving from 10–14 months.[5] Instead, the severity of petitioners' offenses was construed as the crime of accessory after the fact of the most serious offense the grand jury was investigating and their offenses were graded as Category Six and Category Five.[6] Because accessory after the fact is graded as two categories below the underlying offense, 28 C.F.R. § 2.20, 104, most of the petitioners were graded in Category Six, two categories below the category for murder. 28 C.F.R. § 2.20, 201.

Petitioners were graded as accessories after the fact to murder because the Parole Commission decisions in the underlying cases reflect that the hearing examiners ultimately determined that the Eastern District of New York grand jury was investigating murder.[7] The guidelines for a Category Six offense with a high salient factor score suggests that the petitioners should serve from 40–52 months. That determination effectively precludes release on parole for the petitioners, who will be required to complete the term of their sentences.

## II.

## ANALYSIS

### A. Ex Post Facto

The petitioners argue that the application of the Notes and Procedures provision to their parole eligibility status, the provision becoming effective after at least five of them were sentenced,[8] violates the constitutional prohibition against *ex post facto* laws. U.S. Const. Art. I, § 9, cl. 3. "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver v. Graham*, 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981). Although *Weaver* dealt with a state "good-time" provision, the Supreme Court held that a law affecting parole eligibility may be an *ex post facto* violation. *Id.* at 31–32, 101 S.Ct. at 965–66.

■ The test for determining whether a statute violates *ex post facto* protections is that "it must be retrospective" and "it must disadvantage the offender affected by it." *Weaver*, 450 U.S. at 29, 101 S.Ct. at 964. *Accord Burnside v. White*, 760 F.2d 217, 220 (8th Cir.1985).

■ The Notes and Procedures provision under consideration is not an unconstitutional *ex post facto* provision because petitioners cannot demonstrate that they meet the second prong of the *Weaver* test: proof of disadvantage. Prior to the promulgation of the Notes and Procedures provision, the existing parole guidelines, 28 C.F.R. § 2.20, 618(a), did not set a definite severity category for criminal contempt.

5. The guidelines provided by the parole commission are only guidelines and may be deviated from where there are justifiable reasons. However, the guidelines are followed in the large majority of cases. *See Warren v. United States Parole Commission*, 659 F.2d 183, 192 (D.C.Cir.1981), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982).

6. Petitioners Guerra, J. Rosado, Fiallo, Cueto, and A. Rosado have received severity offense ratings for Category Six. Respondents' Exhibits B, E, G, I. Petitioners' Exhibit A, July 9, 1985 Aff. of E. Fink at 2. Petitioner Miller received a severity offense rating in Category Five. Respondent's Exhibit L.

7. The parole commission, in its initial notice of action, regarding petitioner Miller determined that the underlying offense to which she was to be categorized as accessory after the fact was detonation of explosives where serious bodily injury is intended. Thus, she received a severity offense rating in Category Five. Respondents' Exhibit L. The guidelines suggest that she must serve from 24–36 months. Petitioners' Exhibit B.

8. Petitioners Guerra, J. Rosado, Cueto, A. Rosado and Romero were sentenced on June 7, 1983. The regulation became effective through the issuance of a Memorandum on April 1, 1984.

The discretion afforded by that provision (as it indeed still exists in the Code of Federal Regulations) suggests that these petitioners were never guaranteed that their offense would be graded in any particular category. "A change merely in the manner in which the Board, now the Commission, exercises its discretion thus cannot offend the ex post facto clause." *Warren*, 659 F.2d at 195. *See also Richardson v. United States Parole Commission*, 729 F.2d 1154, 1155 (8th Cir.1984) (per curiam); *Hayward v. United States Parole Commission*, 659 F.2d 857, 862 (8th Cir.1981), *cert. denied*, 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 454 (1982). *Cf. Prater v. United States Parole Commission*, 764 F.2d 1230, 1234 (7th Cir.1985) ("a number .of courts have held that such guidelines do not preclude or severely limit the exercise of discretion and therefore do not operate as *ex post facto* laws"). Based on these authorities, it cannot be said that the Notes and Procedures provision violates the *ex post facto* clause.[9]

## B. The Court's Standard of Review

### 1. The Parole Commission's Decision

■ The scope of judicial review of the Parole Commission's decisions with respect to each individual decision regarding the petitioners is extremely limited. *See* 18 U.S.C. § 4203(b) (granting Commission power to grant or deny parole for prisoners); § 4218(d) (holding that the actions of the Commission under § 4203(b) are committed to agency discretion for purposes of review).

The appropriate standard for review of the commission's decisions is whether there has been an abuse of discretion. * * * This means that a court may not substitute its own judgment for that of

the commission, ... but may consider only whether there is a rational basis for the commission's decisions.

*Bialkin v. Baer*, 719 F.2d 590, 593 (2d Cir.1983) (citations omitted). *See also Staege v. United States Parole Commission*, 671 F.2d 266, 268 (8th Cir.1982).

Although this Court may question the validity of the Notes and Procedures provision *per se*, there does not appear to be a basis for overturning its *application*. In other words, if the Commission examiners had evidence before them that the Eastern District grand jury was investigating murder, the Notes and Procedures provision instructs the examiners normally to grade the severity of the offense as accessory after the fact. The petitioners' difficulty with the provision should lie in its prima facie arbitrary classification rather than its rationality as applied. The petitioners have failed to demonstrate that the grand jury, from which the criminal contempt charges stemmed, was not investigating murder or serious bodily injury. *Cf. Rosado*, 728 F.2d at 92 (the grand jury was investigating bombings). Thus, the Court does not find sufficient justification on which to overturn the Commission decisions on the basis of the application of the Notes and Procedures provision of 28 C.F.R. § 2.20, 618(a).[10]

### 2. The Parole Guideline

This Court, however, may review the Notes and Procedures provision to determine whether it is arbitrary or capricious.

This statutory restriction [over review of individual parole decisions] does not preclude either the district court or this court, however, from considering a claim that the guidelines for exercising discre-

---

**9.** Similarly, the Court finds that this provision in no way usurps the sentencing judge's authority. No matter what the guidelines recommend, they cannot be used to incarcerate a prisoner beyond his or her sentence imposed by the sentencing judge. *See United States v. Addonizio*, 442 U.S. 178, 190, 99 S.Ct. 2235, 2243, 60 L.Ed.2d 805 (1979) ("the judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statu-

tory term"). *Accord Farkas v. United States*, 744 F.2d 37, 39–40 (6th Cir.1984).

**10.** The fact that the parole examiners may have, at some point, reached varying decisions as to the exact crimes under investigation, Fink Aff. at ¶ 5, does not supply sufficient evidence that their ultimate decision did not have a factual foundation.

tion as promulgated and applied, violate the intent and directives of the Parole Act. Such an inquiry into the *legality* of agency action, as opposed to its appropriateness within legal bounds, is 'uniquely appropriate for judicial determination.' *Garcia v. Neagle,* 660 F.2d 983, 988 (4th Cir.1981), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982) (emphasis in original) (quoting *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859, 875 (D.C.Cir.1970) ). *See also Farkas,* 744 F.2d at 39.

█ A careful review of the Notes and Procedures provision of 28 C.F.R. § 2.20, 618(a), leads the Court to conclude that it is arbitrary and capricious and not in keeping with the policy of the Parole Commission and Reorganization Act, 18 U.S.C. § 4201 *et seq.,* and thus, must not be applied to these petitioners. The Parole Act sets as one criteria for consideration of parole, "the nature and circumstances of the offense...." 18 U.S.C. § 4206(a). Moreover, the legislative history of the Act states that "[t]he constitutional test to be applied to parole is not one of right, but whether or not parole is administered in a fashion that is neither arbitrary nor capricious to the individual, nor unfairly jeopardizes the legitimate aim of society to control deviant behavior." S.Rep. No. 369, 94th Cong., 1st Sess. 19, *reprinted in* 1976 U.S.Code Cong. & Ad.News, 335, 341. In the circumstances of this case, the Court concludes that the guideline is arbitrary and capricious because it does not relate to the offense for which petitioners were tried and sentenced.

The guideline is arbitrary and capricious because it is predicated upon an unconstitutional irrebuttable presumption that the petitioners were involved in the substantive offenses that the grand jury was investigating. Regardless of the reason that the petitioners refused to cooperate with the grand jury, the government is unable to show or point to any evidence that they were associated or connected with any criminal activities such as murder, bombings, or other terrorist activities or were

ever charged with or tried with respect to any such activities. *See also, e.g.,* Petitioners' Exhibits D, F.

"Statutes creating permanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments." *Vlandis v. Kline,* 412 U.S. 441, 446, 93 S.Ct. 2230, 2233, 37 L.Ed.2d 63 (1973). *See also Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 644, 94 S.Ct. 791, 798, 39 L.Ed.2d 52 (1974). Although the unconstitutional presumption in this case does not directly implicate a criminal conviction, *see, e.g., Francis v. Franklin,* —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), it does introduce an irrebuttable presumption into a procedure in which the petitioners have a great stake. *Cf. Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) (parolee has liberty interest in parole and is entitled to due process upon revocation). That element is contrary to the purpose of the Act, which is to provide rationality in parole decisions.

> The vice of the regulation, therefore, is that it assumes to convert what in the view of the statute is a question of fact requiring proof into a conclusive presumption which dispenses with proof and precludes dispute. This is beyond administrative power. The only authority conferred, or which could be conferred, by the statute is to make regulations to carry out the purposes of the act—not to amend it.

*Miller v. United States,* 294 U.S. 435, 440, 55 S.Ct. 440, 442, 79 L.Ed. 977 (1935).

Moreover, a comparison of the two offenses, criminal contempt and accessory after the fact, demonstrates that it denies the petitioners their due process rights to be equated with the latter when they have only been convicted of the former, especially where no additional proceedings have been held. The power of the court to impose a sanction for criminal contempt for failure to comply with its orders is set forth in 18 U.S.C. § 401(3). Failure to obey a court order, in the case of petitioners'

refusal to obey the order to testify before the grand jury, is sufficient for a conviction of criminal contempt. *Green v. United States*, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958). *See also United States v. Leyva*, 513 F.2d 774, 777 (5th Cir.1975).[11] In contrast, the parole regulations define an "accessory after the fact" to "refer[ ] to the conduct of one who, knowing an offense has been committed, assists the offender to avoid apprehension, trial, or punishment (e.g., by assisting in disposal of the proceeds of an offense)." 28 C.F.R. § 2.20, Chapter Thirteen, Subchapter B, ¶ 1. *See also United States v. Lumpkin*, 448 F.2d 1085, 1090 (D.C.Cir. 1971) (what is required for aiding and abetting is a showing "that the accused knowingly associate himself in some way with the criminal venture, that he participate in it as in something that he wishes to bring about and that he seek by his action to make it succeed").

The Court fails to see the rational connection between failure to comply with a court order to testify before a grand jury about particular crimes and the alleged crimes themselves. *Cf. Lieberman v. Gunnell*, 726 F.2d 75, 78 (2d Cir.1984) (reversing categorization of an offense for purposes of parole because "selling drug dilutents has no similarity to offenses against property and is closer in behavior to opiate offenses"); *Kohlman v. Norton*, 380 F.Supp. 1073, 1074 (D.Conn.1974) ("nothing in *Lupo* [*v. Norton*, 371 F.Supp. 156 (D.Conn.1974)] permits the Board to rate offense severity according to criminal conduct that is *not* alleged") (emphasis in original).

Defendants contend that the Notes and Procedures only codify a previous policy of the parole board as applied in *Cavalieri v. Gunnell*, C.A. No. B–83–712 (D.Conn. Dec. 29, 1983). (Respondents' Exhibit M). *See* Respondents' Answer to Interrogatory 2.

In that case, the parole commission employed a pass-through analysis to equate criminal contempt to obstruction of justice to the underlying offense. *Id.* Slip Op. at 4–5. The Court does not view an unpublished judicial opinion as a binding indication of the Parole Commission's firm policy. More importantly, petitioners have introduced evidence and convincingly shown that *Cavalieri* is inapposite because in that case there was an underlying judicial proceeding relative to the petitioner's criminal involvement.[12] Petitioners' Exhibit E at 10, 12–13. The government has failed to show that there was any such proceeding which even arguably related to petitioners' involvement in the underlying substantive crimes that were ever held relative to any of the petitioners. As such, the Court expresses no opinion as to the merits of applying the Notes and Procedures provision where such a proceeding has been held.

**C. The Administrative Procedure Act**

■ Petitioners contend that the Notes and Procedures provision was enacted in violation of the rulemaking requirement of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* Although the Parole Commission has adopted the guidelines used in formulating parole decisions in accord with 5 U.S.C. § 553, the Notes and Procedures provision to be applied to 28 C.F.R. § 2.20, 618(a) was adopted only through internal mechanisms and not according to the procedures of § 553. *See* Respondents' Answers to Interrogatories.

It is beyond doubt that the Notes and Procedures provision is designed to have a substantive effect on parole determinations. As such, the Court is unable to discern any difference between it and the formal guidelines in terms of the need to use formal rulemaking in its formulation and adoption. *See* 18 U.S.C. § 4218(b). The D.C. Circuit has clarified that parole

---

**11.** For a discussion of the nature of criminal contempt and procedural protections afforded defendants in those cases, *see Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

**12.** The proceeding was a *Fatico* hearing. *United States v. Fatico*, 579 F.2d 707 (2d Cir.1978), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980).

guidelines "calculated to have a substantial effect on ultimate parole decisions" are not exempt from rulemaking under the APA. *Pickus v. United States Board of Parole*, 507 F.2d 1107, 1112–13 (D.C.Cir.1974). Further, the legislative history of the Parole Act recognizes that parole guidelines are subject to the APA. "Guidelines promulgated by the full Commission for parole decision-making are rules and regulations within the meaning of this definition." S.Rep. No. 369, 94th Cong., 1st Sess. 20, *reprinted in* 1976 U.S.Code Cong. & Ad. News 335, 341 (citing *Pickus, supra*). *See also* H.R.Rep. No. 838, 94th Cong., 2d Sess. 26, *reprinted in* 1976 U.S.Code Cong. & Ad.News, 335, 359 ("The Parole Commission shall actively seek the counsel and comment of the corrections and criminal justice communications prior to promulgation of guidelines and shall be cognizant of past criticism of parole decision making").

Thus, the Notes and Procedures provision applied to the petitioners' parole decisions was enacted in violation of the rulemaking provisions of the APA. However, the fact that the Parole Commission did not comply with the APA is not sufficient, in and of itself, to warrant petitioners' immediate release on habeas corpus. "A prisoner has no right to release on parole; he has only a statutory right to have the board comply with the APA and its own rules and guidelines. A departure by the board does not necessarily make his custody illegal." *Brown v. Lundgren*, 528 F.2d 1050, 1054–55 (5th Cir.1976), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976).

In accord with the above Memorandum Opinion, it is this 31st day of July, 1985,

### ORDERED, DECLARED AND ADJUDGED

1. That the Notes and Procedures provision of 28 C.F.R. § 2.20, 618(a) is declared invalid and shall not be applied by the Parole Commission where there has been no demonstration or showing in any underlying judicial proceeding that individuals convicted of criminal contempt have partici-

pated in the underlying substantive offenses; and

2. That respondents shall hold a further parole hearing for each petitioner by August 20, 1985 and shall not utilize the Notes and Procedures provision of 28 C.F.R. § 2.20, 618(a) in their determination of the release on parole decision. If by that date, no parole hearing is held, each petitioner who is denied such hearing shall be released forthwith; and

3. That the Notes and Procedures provision of 28 C.F.R. § 2.20, 618(a) was enacted in violation of the APA. Respondents are enjoined from applying that provision in any case unless and until the statutory rulemaking procedures are utilized.