**Steven GUERRA, et al.**

v.

**Edwin MEESE, III, et al., Appellants.**

No. 85–5912.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 9, 1985.

Decided March 7, 1986.

As Amended March 18 and
March 21, 1986.

Michael L. Martinez, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence, and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on brief, for appellants.

Michael E. Deutsch, Chicago, Ill., with whom Sarah E. Burns, Washington, D.C., was on brief for appellees.

Before WALD and STARR, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion Per Curiam.

PER CURIAM:

Appellees are seven federal prisoners who were convicted on charges of criminal contempt in the Federal District Court for the Eastern District of New York. They are currently serving sentences ranging from eighteen months to three years in various federal penal institutions around the country. Appellees' convictions grew

out of their refusal to testify before a grand jury investigating the activities of a Puerto Rican independence group.

Appellees brought habeas corpus petitions under 28 U.S.C. § 2241 (1982) in the District Court for the District of Columbia seeking release because of allegedly illegal actions of the United States Parole Commission. Appellees also sought mandamus relief, asking the District Court to order the Commission to reevaluate their cases. The District Court granted the appellees' request for bail pending resolution of the merits of the dispute. The government appealed the bail order. Because the District Court has no jurisdiction to entertain the appellees' habeas corpus petitions, we reverse.

## I. BACKGROUND

The Parole Commission generally follows a set of guidelines in determining prisoners' presumptive parole eligibility dates. *See* 28 C.F.R. § 2.20 (1985). The guidelines rate the severity of crimes from severity level one, for minor crimes, to severity level eight for very serious crimes. The guidelines also provide for a "salient factor score," which predicts the potential risk of parole violation by each prisoner. The guidelines do not explicitly treat the crime of criminal contempt, but the Commission has likened it to the crime of accessory after the fact. Notes and Procedures to 618(a), United States Parole Commission, Rules and Procedures Manual (1984) (providing for analogy to accessory after the fact). In this case, the Commission also determined that the crime that appellants were accessories to was the most serious crime investigated by the grand jury—murder. The Parole Commission thus classified the appellees' crimes as severity level six, among the most serious offenses. This classification obviated any possibility of parole.

The District Court, however, found that by analogizing contempt to accessory after the fact, the Commission had acted arbitrarily and capriciously. Moreover, the court ruled that the Commission had inval-idly promulgated this provision. *Guerra v. Meese*, 614 F.Supp. 1430, 1434–1437 (D.D.C. July 31, 1985), Joint Appendix ("J.A.") at 44–50. The court therefore ordered a new parole hearing for the prisoners. The Commission reheard the cases, but decided to venture outside its guidelines. *See* 18 U.S.C. § 4206(c) (1982) (allowing decisions outside the guidelines for good cause). The Commission once again set a presumptive parole eligibility date that would not allow the appellees to be paroled at all.

The appellees then challenged the decision of the Parole Commission to ignore its guidelines. Moreover, pending a decision on the merits of their challenge to the Parole Commission's actions, the appellees asked to be released from their respective correctional facilities. The District Court found that the appellees had demonstrated a likelihood of success on the merits and that the appellees presented little risk of flight. The appellees were thus released on bail pending a decision on the legality of the Commission's actions. *Guerra v. Meese*, No. 85–1510 (D.D.C. Sept. 3, 1985), J.A. at 88. In this appeal, the government challenges only the District Court's bail decision. Pending argument on the merits of the bail decision, this court granted a stay. *Guerra v. Meese*, No. 85–5912 (D.C. Cir. Sept. 23, 1985). Appellees thus remain incarcerated.

## II. HABEAS CORPUS JURISDICTION

A district court may not entertain a habeas corpus action unless it has personal jurisdiction over the custodian of the prisoner. *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 495, 93 S.Ct. 1123, 1129, 35 L.Ed.2d 443 (1973); *Schlanger v. Seamans*, 401 U.S. 487, 491, 91 S.Ct. 995, 998, 28 L.Ed.2d 251 (1971). In this case, the District Court construed the prisoners' complaint as either an application for a writ of habeas corpus or an application for a writ of mandamus. *Guerra v. Meese*, No. 85–1510, slip op. at 1 (D.D.C. June 13, 1985), J.A. at 30. The District Court reasoned that "even if [the prisoners] were required to bring their action under the habeas cor-

pus statutes, it is not an inflexible determination that they must bring their action in the district of confinement. *See Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973)." *Id.* at 3 n. 3, J.A. at 32, n. 3. While we agree that the habeas determination is not inflexible, we reject appellees' argument that, in this case, the Parole Commission can be properly characterized as their custodian.

■ It is clear that the Parole Commission is responsible for the appellees' continued detention. Were the Commission to decide to change the prisoners' parole eligibility dates today, they might be freed. But this power does not make the Commission the prisoners' custodian in the sense of the habeas corpus statute. Appellees argue that because the Commission has the power to release them, the Commission is their custodian. But their argument extends to any person or entity possessing some sort of power to release them. Under appellees' theory, the Attorney General of the United States could be considered the custodian of every prisoner in federal custody because he supervises the Federal Bureau of Prisons. *See* 18 U.S.C. § 4041 (1982). We have specifically rejected this interpretation. *Sanders v. Bennett,* 148 F.2d 19, 20 (D.C.Cir.1945).[1] Appellees' argument would even extend to the President of the United States, who has the power to pardon. U.S. Const. art. II, § 2. The same argument, as applied to sentencing judges (who have the power to reduce the sentence) has been squarely rejected. *Christian v. Garrett,* 432 F.Supp. 240, 241 (E.D. Tenn.1976); *Spencer v. Cundiff,* 413 F.Supp. 1246, 1247 (W.D.Va.1976), *rev'd on other grounds,* 573 F.2d 1306 (4th Cir. 1978).

In 28 U.S.C. § 2243 (1982), Congress required the federal courts to direct the writ of habeas corpus "to the person having custody of the person detained." Moreover, unless the writ presents only issues of law, "the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained." *Id.* These provisions indicate that the custodian is the person having a day-to-day control over the prisoner. That person is the only one who can directly produce "the body" of the petitioner. In *Billiteri v. United States Bd. of Parole,* 541 F.2d 938, 948 (2d Cir.1976), the Second Circuit stated that:

> [I]t would stretch the meaning of the term beyond the limits thus far established by the Supreme Court to characterize the Parole Board as the "custodian" of a prisoner who is under the control of a warden and confined in a prison, and who is seeking, in a habeas corpus action, to be released from precisely that form of confinement. At that point the prisoner's relationship with the Parole Board is based solely on the fact that it is the decisionmaking body which may, in its discretion, authorize a prisoner's release on parole.

We agree and hold that, for purposes of challenging a Parole Commission action on the sentence a prisoner is currently serving in a federal penal facility, the warden of that facility is the prisoner's custodian within the meaning of 28 U.S.C. §§ 2241–2243 (1982). *See Ex parte Endo,* 323 U.S. 283, 306, 65 S.Ct. 208, 220, 89 L.Ed. 243 (1944) (writ is directed to prisoner's "jailer"); *Billiteri, supra; Diogenes v. Malcolm,* 600 F.Supp. 815, 816 (E.D.Pa.1985) (warden is appropriate respondent when prisoner challenges Parole Commission in habeas action); *Scott v. United States,* 586 F.Supp. 66, 68 (E.D.Va.1984) (appropriate

---

**1.** *Demjanjuk v. Meese,* 784 F.2d 1114, (D.C.Cir. 1986) (Bork, J., in chambers), provides no support for appellees' argument. In that case, the location of the petitioner was confidential. The court ruled that "it is appropriate, in these *very limited and special circumstances,* to treat the Attorney General of the United States as the custodian." *Id.* at 1116 (emphasis added). The

court explicitly stated that "[s]hould it become known that petitioner is held in a jurisdiction other than this one, a judge of this circuit would be divested of jurisdiction." *Id.* Since the known location of the appellees in this case is outside the District of Columbia, *Demjanjuk* is inapposite.

respondent in habeas actions is generally the warden of facility where petitioner is located); *Brown v. Neagle*, 486 F.Supp. 364, 365 (S.D.W.Va.1979) (same).

Nothing in *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), is to the contrary. In *Braden*, the Supreme Court ruled only that a prisoner incarcerated in an Alabama state prison could challenge in a Kentucky federal court the validity of an interstate detainer by Kentucky authorities. Appellees insist that *Braden* demonstrates that habeas corpus analysis is sufficiently flexible to allow the District Court in the District of Columbia to entertain their actions. Appellees' Brief at 3–4. But none of the peculiar factors present in *Braden* appears in the instant case. The prisoner in *Braden* was in the custody of two separate authorities simultaneously. The Supreme Court expressly found that the detainer lodged against the prisoner satisfied the "in custody" requirement of the statute. 410 U.S. at 488, 93 S.Ct. at 1126. Moreover, the Court noted that the prisoner was permitted to attack that custody before it was perfected in the form of incarceration by the Kentucky authorities. *Id.* at 488–89, 93 S.Ct. at 1126 (citing *Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968)). By contrast, in this case a single sovereign controls the custody of the appellees through a single sentence. Thus, the imposition of parole after incarceration cannot be characterized as a different custody within the meaning of *Braden*. *Cf.* 410 U.S. at 489 n. 4, 93 S.Ct. at 1126 n. 4.

The *Braden* decision in no way stands for the proposition that the Parole Commission is the "custodian" of a prisoner currently incarcerated in a federal penal institution or that federal courts may entertain a habeas corpus petition when the custodian is outside their territorial jurisdiction. When the appellees are paroled, if ever, the Parole Commission might then be considered their custodian, within the meaning of the habeas corpus statute. *See Jones v. Cunningham*, 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963); *Pressley v.*

*Swain*, 515 F.2d 1290, 1292 (D.C.Cir.1975) (en banc), *rev'd on other grounds*, 430 U.S. 372, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977). Until they are paroled, however, the proper respondents to the prisoners' habeas petitions are the wardens of the federal facilities at which the prisoners are confined.

The *Braden* Court concluded that "[r]ead literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian." *Braden*, 410 U.S. at 495, 93 S.Ct. at 1129, 35 L.Ed.2d 443. Yet that is precisely the crucial factor missing in this case. Appellees admit that none of the wardens holding them can be found in the District of Columbia. Thus, the appellees' habeas corpus petitions must be dismissed for lack of jurisdiction. *Schlanger v. Seamans*, 401 U.S. 487, 490–91, 91 S.Ct. 995, 997–98, 28 L.Ed.2d 251 (1971).

### III. INTERIM RELEASE ON BAIL

Since the District Court cannot entertain a habeas action, it most assuredly cannot bail the appellees out of jail. Bail is available as interim relief only when the court would ultimately have power to release the prisoners if they were successful on the merits. In *Baker v. Sard*, 420 F.2d 1342, 1343 (D.C.Cir.1969), this court noted: "When an action pending in a United States court seeks release from what is claimed to be illegal detention, the court's jurisdiction to order release as a final disposition of the action includes an inherent power to grant relief pendente lite, to grant bail or release pending determination of the merits."

It is clear that appellees in this action cannot merely allege that because their confinement is illegal they must be released. Litigation concerning the fact or duration of confinement *must* be brought via a habeas corpus action. *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Based on the above analysis, the District Court has no jurisdic-

tion over a habeas corpus action in this case.[2]

Even if the appellees' complaint could be viewed as a form of action other than a petition for habeas corpus, an issue we do not reach, *cf. In re Chatman-Bey,* 718 F.2d 484, 487–88 & nn. 7–8 (D.C.Cir.1983) (per curiam), the District Court still could not release them. If the Parole Commission's general rule were invalidated, a decision to release the prisoners would still remain within the sole discretion of the Commission. *Iuteri v. Nardoza,* 732 F.2d 32, 36 (2d Cir.1984); *Billiteri v. United States Bd. of Parole,* 541 F.2d 938, 944 (2d Cir. 1976). While the District Court does have power to review the Commission's guidelines, "[t]he only remedy which the court can give is to order the [Commission] to correct the abuses or wrongful conduct within a fixed period of time." *Id.* If the Commission's actions in this case are invalidated, release would not inexorably follow. The Commission could conceivably promulgate a new policy for determining severity factors for unlisted crimes, promulgate a valid guideline for criminal contempt, or completely disregard its guidelines in deciding the appellees' cases. 18 U.S.C. § 4206(c) (1982). The District Court would still be limited to ordering the Parole Commission to follow the court's interpretation of the law. The court would have no power to hold its own parole hearing. *Billiteri,* 541 F.2d at 943–44. Since the power to release remains in the Commission's hands, the District Court could not release the appellees even if they were successful on the merits. Thus, it certainly cannot release them in the interim. *Baker v. Sard,* 420 F.2d 1342 (D.C.Cir.1969).

\* \* \*

■ The government urges this court to rule that an attack on actions of the Parole Commission is necessarily an attack challenging the fact or duration of confinement and thus only maintainable by habeas cor-

pus under *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Appellant's Brief at 8, 11. Moreover, the government argues that the District Court has misapplied the criteria set forth in *Starnes v. McGuire,* 512 F.2d 918 (D.C.Cir. 1974) (en banc), governing the proper forum for this type of action. Appellant's Brief at 7. These arguments, however, pertain to the District Court's jurisdiction to entertain the merits of this case. A trial court ruling that the court has jurisdiction to hear a case is not normally appealable until the court has entered a final judgment. 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3914 (1976 & 1985 Supp.). Since we are without jurisdiction over the nonfinal aspects of this case, 28 U.S.C. § 1291 (1982), we express no opinion on these points.

■ The District Court's bail order, however, stands on a different footing. This is the only aspect of the case the government challenged in its Notice of Appeal. J.A. at 101. The bail decision falls within the collateral order doctrine and is thus immediately reviewable. *See Iuteri v. Nardoza,* 662 F.2d 159, 161 (2d Cir.1981); 18 U.S.C.A. § 3731 (West Supp.1985). Having reviewed that order, we reverse the District Court's grant of bail and remand for further proceedings consistent with this opinion.

*It is so ordered.*

---

**2.** We need not decide under what circumstances, if any, the District Court could grant bail as interim relief if it had habeas corpus jurisdic-

tion. The question presented in this case is whether the court can grant bail *absent* habeas jurisdiction.