Julio E. ROMAN, Petitioner,

v.

John ASHCROFT, et al.,[1] Respondents.

No. 1:01CV1236.

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 6, 2001.

1. Among the named respondents is Kevin Rooney, Acting Commissioner of the I.N.S. Pursuant to Rule 25(d)(1), James W. Ziglar, the new Commissioner, is substituted for Mr. Rooney.

Julio E. Roman, Oakdale, LA, David W. Leopold, Law Office of David Wolfe Leopold, Cleveland, OH, for Julio E. Roman.

Kathleen Lucille Midian, Office of the United States Attorney, Northern District of Ohio, Cleveland, OH, for John Ashcroft, U.S. Department of Justice Kevin Rooney, Immigration & Naturalization Service, Robert L. Brown, Ohio District Director of INS, Christine G. Davis, New Orleans District Director—INS.

## *MEMORANDUM AND ORDER*

ANN ALDRICH, District Judge.

This is a petition for a writ of habeas corpus. The respondents ("the government") have moved to dismiss for want of personal jurisdiction and for improper venue (docket no. 14).[2] For the following reasons, the motion to dismiss for want of personal jurisdiction is granted in part and denied in part, and the motion to dismiss for improper venue is denied.

## BACKGROUND

The petitioner, Julio Roman, is a national of the Dominican Republic. His status was adjusted to that of a lawful permanent resident on October 29, 1996. On September 30, 1999, he was convicted in this Court (per Dowd, J.) of violating 18 U.S.C. § 1546(a), relating to the making or use of counterfeit visas, and 42 U.S.C. § 408(a)(7)(C), relating to misuse of a social security number, pursuant to his guilty pleas. He was sentenced, *inter alia,* to a fifteen-month term of imprisonment. On January 19, 2000, the office of the Immigration and Naturalization Service in Cleveland issued a notice to appear to Roman while he was serving his sentence. The notice charged that Roman was subject to removal from the United States on account of his criminal convictions. The Service filed an additional charge of deportability on June 21, 2000, which supplemented the allegations in the original notice to appear.

A hearing was held beginning on July 6, 2000, in Oakdale, Louisiana, before an immigration judge. Through his counsel, Roman admitted the allegations in the notice to appear and the supplemental allegations. The immigration judge found that Roman was subject to removal and that he was not eligible for cancellation of removal. The judge therefore ordered Roman removed to the Dominican Republic. On April 20, 2001, the Board of Immigration Appeals affirmed the immigration judge's decision per curiam. On July 11, 2001, the Board denied Roman's timely motion to reopen.

Roman filed the instant petition on May 21, 2001. He named four respondents: the Attorney General, the Commissioner, and the District Directors of the Cleveland District and the New Orleans District of the I.N.S. His claims on the merits are (1) that I.N.A. § 212(h) violates the equal protection principles implicit in the Due Process Clause; and (2) that he was deprived of procedural due process at his removal hearing because the immigration judge did not permit him to testify as to facts that, he argues, would have established that he made or used counterfeit immigration documents only to benefit his immediate family, and thus would have established that

---

2. The government has also moved for summary judgment on the merits. The Court does not consider the merits in this memorandum and order.

his crime was not an aggravated felony under I.N.A. § 101(a)(43)(P).

## DISCUSSION

### A. PERSONAL JURISDICTION OVER THE NEW ORLEANS DISTRICT DIRECTOR

■ In habeas corpus proceedings, a court has jurisdiction of the petition if it has personal jurisdiction over the petitioner's custodian. *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 495, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). In this case, it is not disputed that the New Orleans District Director is Roman's custodian. Therefore, the Court must consider whether it has personal jurisdiction over her.

The answer to the question turns on whether she could have been subjected to the jurisdiction of the Ohio courts. Fed. R.Civ.P. 4(k)(1)(A). Because she is a nonresident, her amenability to the jurisdiction of the Ohio courts depends on the application of the Ohio long-arm statute, Ohio Rev.Code § 2307.382.

> In pertinent part, the statute provides: A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>> (1) Transacting any business in this state ...

*Id.* § 2307.382(A). Roman argues that the District Director has transacted business in Ohio such that the Ohio courts could have exercised jurisdiction over her. The government argues that she has not.

■ There will certainly be habeas cases in which the respondent *has* transacted business within the state such that she is amenable to service of process. For example, in *Mojica v. Reno*, 970 F.Supp. 130 (E.D.N.Y.1997) (per Weinstein, J.), the New Orleans District Director allowed Mo-

jica to return to New York from Louisiana after he posted a bond but continued to claim the power to seek his surrender. The District Director subsequently ordered Mojica to return to Louisiana. The Court found that he had transacted business in New York. *Id.* at 166. In Roman's case, on the other hand, there is no evidence that the New Orleans District Director issued any orders directed to Roman while Roman was in Ohio. Indeed, the notice to appear was issued by the Cleveland office of the I.N.S. (Ex. 6 to Resps' Mem. in Opp'n), and it was directed to Roman in Kentucky, where he was serving his criminal sentence. There is no evidence that the New Orleans District Director took any action with effects in Ohio, or that her agents took any action with effects in Ohio, that was relevant to Roman's case. This case must be distinguished from *Mojica*. Thus Roman has failed to make the requisite prima facie showing of jurisdiction, and the Court finds that it lacks personal jurisdiction over the New Orleans District Director. Accordingly, the motion to dismiss for want of jurisdiction must be granted in part.

### B. THE STATUS OF THE OTHER RESPONDENTS AS CUSTODIANS

Roman argues, in the alternative, that the other respondents are also his custodians, and that the Court has jurisdiction over them. Both parties focus on the Attorney General rather than on the Commissioner or the Cleveland District Director in their briefs, and the Court therefore confines its discussion to the question whether the Attorney General may be named as respondent in a petition filed by a detainee in Roman's position.

As the parties note, there is a split of authority concerning this question. On

the one hand, several district courts in the Eastern District of New York have held that the Attorney General is a custodian, at least under certain circumstances. *See Pena–Rosario v. Reno,* 83 F.Supp.2d 349, 362 (E.D.N.Y.2000); *Pottinger v. Reno,* 51 F.Supp.2d 349, 357 (E.D.N.Y.1999), *aff'd* 242 F.3d 367, 2000 WL 1864477 (2d Cir. 2000); *Mojica, supra* at 166; *Nwankwo v. Reno,* 828 F.Supp. 171, 175 (E.D.N.Y. 1993). On the other hand, the First Circuit recently rejected this line of cases. *Vasquez v. Reno,* 233 F.3d 688 (1st Cir. 2000), *petition for cert. filed,* 69 U.S.L.W. 3749 (U.S. Mar. 8, 2001) (No. 00–1719); *accord Santiago v. Immigration & Naturalization Serv.,* 134 F.Supp.2d 1102, 1104 (N.D.Cal.2001). It does not appear that the issue has arisen in this circuit. For the following reasons, this Court finds that in the circumstances of the instant petition, the Attorney General is an appropriate respondent.

### 1. Background

In order to appreciate the policies that underlie the usual rule requiring petitioners to name their immediate custodians as respondents, it will be helpful to consider the history of the habeas corpus statute. For present purposes, it is not necessary to trace that history as far back as the First Judiciary Act. It is enough to begin with the statute as it existed in the mid-nineteenth century. In 1867, the statute corresponding to our 28 U.S.C. § 2243 provided as follows:

> [T]he said justice or judge to whom such application shall be made shall forthwith award a writ of habeas corpus, unless it shall appear from the petition itself that the party is not deprived of his or her liberty in contravention of the constitution or laws of the United States. Said writ shall be directed to the person in whose custody the party is detained, who shall make return of said writ and

bring the party before the judge who granted the writ . . .

Act of Feb. 5, 1867, c. 28, § 1, 14 Stat. 385–86. As codified in the Revised Statutes, the provision read:

> The court, or justice, or judge to whom such application is made shall forthwith award a writ of habeas corpus, unless it appears from the petition itself that the party is not entitled thereto. The writ shall be directed to the person in whose custody the party is detained.

> Any person to whom such writ is directed shall make due return thereof . . .

> \* \* \* \* \* \*

> The person making the return shall at the same time bring the body of the party before the judge who granted the writ.

R.S. §§ 755–756, 758.

 A reading of these statutes demonstrates a common mistake in our usual way of using the term "habeas corpus." We often think of habeas corpus as the *remedy* the prisoner seeks, *i.e.,* that if the prisoner is entitled to relief, the court will issue a writ of habeas corpus, which will end his imprisonment. But as the older statutes show, the writ of habeas corpus merely initiates the proceedings. It is analogous in this respect to the writ of certiorari, another prerogative writ still in use. When the Supreme Court grants a writ of certiorari, it is bringing the case before it for decision rather than deciding it on the merits. The same is true in the case of habeas corpus. *See* George F. Longsdorf, *Habeas Corpus: A Protean Writ & Remedy,* 8 F.R.D. 179, 187 (1949).

 On the face of the nineteenth-century statutes quoted above, it seems that the respondent would have the burden of bringing the prisoner into court in every case in which the prisoner had made out a

prima facie case for relief in his petition. Perhaps at one time this was true. However, as early as 1830, the Supreme Court employed a show-cause procedure, in which the Court ordered the respondent to show cause why the writ should not be granted. *Ex parte Watkins,* 28 U.S. (3 Pet.) 193, 196, 7 L.Ed. 650 (1830). One effect of this procedure was to relieve respondents of the need to produce the bodies of prisoners in court in cases in which the court was able to determine, either on the face of the petition or after show cause proceedings, that the petitioner was not entitled to relief. Because of this practical advantage, it is small wonder that the Supreme Court eventually approved its long-standing practice of issuing orders to show cause. *See Walker v. Johnston,* 312 U.S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830 (1941). The show-cause procedure was included in the 1948 revision of the statute and is now found in 28 U.S.C. § 2243 as an alternative to granting the writ. The modern statute also provides:

> Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained.

28 U.S.C. § 2243. The statute implies that if the petition and the return do present only issues of law, the respondent is not required to produce the body of the petitioner.

■ As a result of the courts' approval of show cause orders in lieu of the writ, and of the rule of *Walker,* now codified in § 2243, actual production of the petitioner's body in court is necessary only in those cases in which (1) the court does not dismiss the petition *sua sponte* on the ground that it is facially insufficient; (2) the court issues the writ rather than a show cause order, or the court determines, after considering the return to the show cause order, that a hearing is necessary; and (3) the petition, together with the answer, presents issues of fact. This is a vanishingly small category of cases. *See* James S. Liebman & Randy Hertz, 1 Federal Habeas Corpus Practice & Procedure § 20.1 n. 3 (noting that fewer than 2% of all habeas corpus filings result in an evidentiary hearing).

Since the prisoner's presence in court is required in so few cases, it is difficult to understand why courts made so much of the requirement that the respondent be the person best able to bring the prisoner to court. There seems to be no good practical reason, at least as to federal prisoners. Under 28 U.S.C. § 2255, "a court may entertain and determine [the motion to vacate the sentence] without requiring the production of the prisoner at the hearing." Nevertheless, it is sometimes necessary to have the prisoner in court to give testimony. Despite the large number of § 2255 motions filed, and despite the fact that the United States, rather than the warden of the federal prison, is named in the motion, the government is able to produce movants in court when required. Indeed, it seems that it is the responsibility of the marshal rather than the warden of the prison to bring federal prisoners into court when required by court order. *See* 18 U.S.C. § 3621(d).

This point is even stronger if one considers the purposes behind the enactment of § 2255. In prior practice, federal prisoners, like state prisoners, resorted to habeas corpus for postconviction relief. Because the federal prisons in 1948 were located in only a few states, the districts in which those prisons were located bore a disproportionate share of the weight of habeas corpus petitions. *See* Liebman & Hertz, *supra* at § 41.2a n. 8. Under § 2255, prisoners were required to seek relief in the district of sentencing rather than the dis-

trict of incarceration, thus distributing the burden more equitably among the district courts. *Id.* n. 9. But if the purpose of § 2255 was to permit prisoners to seek relief in the nature of habeas corpus in a "more convenient forum," *United States v. Hayman,* 342 U.S. 205, 219, 72 S.Ct. 263, 96 L.Ed. 232 (1952), then clearly Congress saw no great inconvenience in abandoning the requirement that the immediate custodian, and only the immediate custodian, be named as a party in a post-conviction proceeding in which a prisoner might have to be produced in court.

In *Vasquez, supra,* the First Circuit considered the history of § 2255 from a different perspective. The court reasoned that when Congress perceived a caseload management problem in the 1940s, it enacted remedial legislation. Therefore, if a caseload management problem exists today with regard to aliens being held in Louisiana pending removal, the court concluded that the remedy should be left to Congress. *See Vasquez, supra* at 694. But while a legislative solution may be desirable in the end, the question still remains as to what action courts should take in the meantime, when faced with situations in which the burden on one court's docket may effectively deny relief to petitioners whose custodians are within its jurisdiction. It is difficult to square the conclusion of *Vasquez*—that courts should do nothing—with cases such as *Demjanjuk v. Meese,* 784 F.2d 1114 (D.C.Cir.1986) (per Bork, J., in camera). The Court briefly reviews the facts of that case.

In *Demjanjuk,* the petitioner was being held by the marshal in an undisclosed location while awaiting extradition, and his attorneys therefore filed a petition on his behalf with Judge Bork of the D.C. Circuit. *See* 28 U.S.C. § 2241(a) (circuit judge has power to grant writ of habeas corpus within his jurisdiction). Judge Bork held that in the circumstances, it was appropriate to name the Attorney General as respondent, because the only alternatives were (1) to require Demjanjuk's attorneys to file in every district, on the grounds that he was detained in *some* district and that jurisdiction would exist over one of the petitions; or (2) to require them to file in the Supreme Court, or with a single Justice, and thus to take advantage of the Supreme Court's national jurisdiction. Judge Bork found both alternatives to be impractical, and he noted that unless the Attorney General could be named as respondent, the petitioner might be deprived of a remedy. "Yet it is essential," Judge Bork wrote, "that petitioner not be denied the right to petition for a writ of habeas corpus." *Demjanjuk, supra* at 1116. Thus, he held, jurisdiction would lie in the D.C. Circuit. *Id.*

▮ This Court generally approves of the principle in *Demjanjuk.* When the right to petition for habeas corpus would otherwise be denied, the immediate custodian rule must yield.[3] This Court would extend Judge Bork's reasoning in only one respect. Once a court takes the step of approving the Attorney General as a proper respondent, there would appear to be no *jurisdictional* reason why the petition could not be heard in any district in which the Attorney General was subject to service of process. *See Braden, supra* at 495, 93 S.Ct. 1123.

If there is no strong practical reason for the rule requiring that the respondent be the immediate custodian, and if, as argued

---

**3.** There are, of course, cases in which there is no right to petition for habeas corpus. *See, e.g., Johnson v. Eisentrager,* 339 U.S. 763, 70 S.Ct. 936, 94 L.Ed. 1255 (1950) (enemy alien detained outside the territorial jurisdiction of the United States). In such cases, the principle of *Demjanjuk* will not apply.

above, the mere possibilîty that Congress could provide a legislative remedy to ensure the availability of the writ is insufficient to show that the courts should not ensure the availability of the writ in the absence of such legislation, it is difficult to understand why courts have adhered to the rule with such tenacity. No doubt part of the reason is that by enacting § 2255, Congress relieved the pressure on dockets and the inequitable distribution of habeas petitions that might in time have led the courts to depart from the rule. It seems likely to this Court that another part of the explanation is the tendency to focus on the words used in the writ. As the Supreme Court has noted, "habeas corpus" is literally a command that the respondent "have the body" of the prisoner with him in court on the return day. *See Eisentrager, supra* at 778, 70 S.Ct. 936. But this Court can only hope that we are long past the time when the ancient wording of a writ is thought to limit the relief available.

### 2. The Problem Facing Mr. Roman

Given the above discussion, it seems to this Court that the correct question in this case is whether Roman will be deprived of his right to petition for a writ of habeas corpus unless this Court permits him to name the Attorney General as respondent. More exactly, the question is whether Roman has made a prima facie showing that he will be deprived of his right. *Cf. Market/Media Research, Inc. v. Union–Tribune Publ'g Co.,* 951 F.2d 102, 104 (6th Cir.1991) (where court rules on a 12(b)(2) motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction).

The impetus for the New York cases that have allowed petitions naming the Attorney General as respondent in circumstances similar to the circumstances of the instant case is the Fifth Circuit's observa-

tion in *Emejulu v. Immigration & Naturalization Serv.,* 989 F.2d 771, 772 (5th Cir.1993) (per curiam):

> We are satisfied that the inundated district and magistrate judges of the Western District of Louisiana are toiling long and hard to process the torrent of habeas petitions flowing from the Oakdale facility as a result of the lengthy delays in processing the detainees for deportation.... [T]he administrative delays in processing deportations produces [sic] an atypical and unanticipated volume of habeas petitions that is beyond the capability of the district court to process in a timely fashion.

*Emejulu* was cited by *Nwankwo, supra* at 174, in support of its decision not to transfer the case to the Western District of Louisiana. The Fifth Circuit's comments were also noted as relevant to jurisdiction or venue in habeas corpus petitions by prisoners held at Oakdale while awaiting removal in *Okongwu v. Reno,* 229 F.3d 1327, 1331 (11th Cir.2000) (remanding for consideration of venue questions in light of *Emejulu*). Indeed, even the First Circuit accepted *arguendo* the view that the docket in the Western District of Louisiana was "admittedly overcrowded," *Vasquez, supra* at 694, although it rejected the conclusion that the overcrowding was grounds to permit jurisdiction in the District of Massachusetts.

The Fifth Circuit is clearly in the best position to comment on the extent of the problem in the Western District of Louisiana. Other courts, including, as noted above, courts that have rejected the position that the Attorney General is an appropriate respondent in circumstances such as the circumstances of this case, have given weight to the Fifth Circuit's comment, and this Court will do likewise. As no evidence to the contrary exists in the record, the Court finds that there is sufficient

evidence to conclude, prima facie, that the district court in the Western District of Louisiana is unable to process pending habeas petitions filed by aliens being held at Oakdale in a timely fashion.

The danger, of course, is that Roman might be removed from the United States before his petition could be heard on the merits. It may be that the serious collateral consequences of removal (*e.g.*, future inadmissibility into the United States) are such that removal would not render an already-filed petition moot. *See Steele v. Blackman*, 236 F.3d 130, 134 n. 4 (3d Cir.2001) (citing Gerald L. Neuman, *Jurisdiction & The Rule Of Law After The 1996 Immigration Act*, 113 Harv. L.Rev.1963, 1996 n. 191 (2000)). Nevertheless, the profound practical difficulties that would arise were the petitioner forced to litigate his petition from the country of removal are such that this Court concludes that there is prima facie reason to believe that removal of Roman to the Dominican Republic prior to adjudication of the merits of his petition would, for practical purposes, deny him the benefit of the writ. There are serious questions, for example, concerning his ability, if removed, to communicate with his lawyer and the court, or if representing himself, to have access to the necessary authorities for preparation of his briefs. Moreover, should his testimony become necessary, it would be impracticable to obtain it.

### 3. The Attorney General As Proper Respondent.

█ Even if one accepts the principle that the immediate custodian rule must yield in cases in which the right to petition for the writ would otherwise be denied, and that this is such a case, one may still question whether the Attorney General, rather than some other government officer, is the appropriate custodian. There

are at least two reasons why the Attorney General is the appropriate custodian in such a case.

The first reason is applicable only to petitions filed by aliens awaiting removal. Under I.N.A. § 236(c), the Attorney General "shall take into custody any alien who" is deportable for one of several reasons, *e.g.*, for having committed an offense for which the alien was sentenced to a term of imprisonment of at least one year. Section 236(c) is the basis for Roman's detention, and on the face of the statute, the Attorney General is his custodian. In contrast, the statute governing imprisonment of persons convicted of federal crimes, 18 U.S.C. § 3621(a), provides: "A person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons ..." Thus a convicted defendant is, on the face of the statute, in the custody of the Bureau of Prisons rather than the Attorney General. ·However, there is a textual reason to conclude that aliens awaiting removal are in the custody of the Attorney General, even if other federal prisoners are not.

The second reason is applicable more generally. The Attorney General has authority over the I.N.S. as well as the B.O.P. *See* I.N.A. § 103(a) (Attorney General charged with the administration and enforcement of the I.N.A. and all other laws relating to immigration and naturalization, except when functions conferred on the President, the Secretary of State, or diplomatic or consular officers); I.N.A. § 103(c) (Commissioner's powers delegated to him by the Attorney General); 18 U.S.C. § 4041 (the director of the B.O.P. serves directly under the Attorney General); 18 U.S.C. § 4042 (the B.O.P. carries out its duties under the direction of the Attorney General). He can therefore order the B.O.P. or the I.N.S. to produce prisoners in court, and those agencies, in

turn, can require the prisoner's immediate custodian to produce him in court. In contrast, the Cleveland District Director, also named by Roman as a respondent, is not higher in the chain of command than the New Orleans District Director, who is Roman's immediate custodian. Therefore, he lacks the authority to order the New Orleans District Director to produce Roman in court. The Attorney General's position in the chain of command makes him an appropriate custodian in the class of cases, discussed above, in which enforcement of the immediate custodian rule would deprive the prisoner of the right to petition for a writ of habeas corpus.

The D.C. Circuit has rejected the chain of custody argument on the grounds that it makes the Attorney General the custodian of all federal prisoners for habeas corpus purposes and that its reasoning would extend to the President, who is, of course, higher in the executive branch's chain of command than the Attorney General. _See Guerra v. Meese,_ 786 F.2d 414, 416 (D.C.Cir.1986) (per curiam). But in _Guerra,_ there was no apparent reason why the petitioners could not have named their immediate custodian as respondent. The principle of _Demjanjuk_ does not suggest that in such cases, petitioners should be free to ignore the immediate custodian rule. Rather, _Demjanjuk_ allows petitioners to name someone higher in the chain of command only when it is impossible to name the immediate custodian. Moreover, the statutes vest authority in the Attorney General, not the President. Thus although the Attorney General serves at the President's pleasure, Congress has vested authority over the Department of Justice and its agencies in the Attorney General, not the President. Without becoming involved in a discussion of the unitary executive theory, it is sufficient to note that there are statutory grounds for choosing the Attorney General rather than the President

as the officer in the chain of command to whom a petitioner may turn when he cannot name his immediate custodian as respondent.

For the foregoing reasons, then, this Court concludes that in the circumstance of this case, the Attorney General is a proper respondent. As there is no question regarding the Attorney General's amenability to service of process from this Court, this Court also finds that it has personal jurisdiction over him. Accordingly, the government's motion to dismiss for want of personal jurisdiction is denied in part.

## C. VENUE

■ The government also moves to dismiss on the grounds that venue is improperly laid in this district. The parties suggest in their briefs that the Court should apply 28 U.S.C. § 1391(e), the provision of the venue statute governing civil actions against officers or employees of the United States. Instead of applying this statute, the court in _Mojica, supra,_ sought to determine the question of venue in light of "traditional venue considerations," _Mojica, supra_ at 167 (citing _Braden, supra_ at 493, 93 S.Ct. 1123, and _United States ex rel. Sero v. Preiser,_ 506 F.2d 1115, 1130 n. 11 (2d Cir.1974)). The _Mojica_ court's citation to _Braden_ and _Sero_ is not persuasive, insofar as in both cases, the respondent was an officer or organ of a state rather than of the United States. Thus although § 1391(e) clearly did not govern in either _Braden_ or _Sero,_ it does not follow that § 1391(e) is inapplicable when the respondent is a federal official, as in _Mojica_ and the instant case. Nevertheless, the Court finds that § 1391(e) does not apply, because habeas corpus is not a "civil action" within the meaning of the statute. To be sure, habeas corpus is civil, _i.e.,_ not criminal, in nature. _See_ Liebman & Hertz,

*supra* at § 2.2 n. 3 and cases cited. Nevertheless, this Court finds that Fed. R.Civ.P. 81(a)(2) necessarily implies that habeas corpus is not a "civil action." The rule provides that the Rules of Civil Procedure are

> applicable to proceedings for admission to citizenship, habeas corpus, and quo warranto, to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions.

The last phrase of the quoted sentence clearly implies that while the practice in habeas corpus cases may conform to the practice in civil actions to a greater or lesser degree, the two are not identical. *See Switkes v. Laird*, 316 F.Supp. 358, 361 (S.D.N.Y.1970); *but see United States ex rel. Armstrong v. Wheeler*, 321 F.Supp. 471, 477 (E.D.Pa.1970). Therefore, the Court will apply traditional venue considerations rather than § 1391(e) to this case.

■ Traditional venue considerations include: (1) the location where the material events took place; (2) the location where records and witnesses pertinent to the claim are likely to be found; (3) the convenience of the forum for respondent and petitioner; and (4) the familiarity of the court with the applicable laws. *Braden, supra* at 493, 93 S.Ct. 1123.

■ In this case, the Court finds Judge Weinstein's discussion of traditional venue considerations in the analogous case of *Mojica* to be persuasive. *See Mojica, supra* at 168. This Court would emphasize that the records relating to the underlying criminal conviction are in this district, and that Roman's argument on the merits is intertwined with the facts of the criminal case to the extent he claims he could have shown at the removal hearing that his conduct was within the exception of I.N.A. § 101(a)(43)(P) and thus that his

crime was not an aggravated felony. The Court also notes that Roman's lawyer practices law in this district, and that the Court perceives no inconvenience to the Attorney General if venue lies in this district rather than in Louisiana. Thus the Court finds that traditional venue considerations support the conclusion that venue lies in this district. Accordingly, the government's motion to dismiss for improper venue is denied.

## CONCLUSION

For the foregoing reasons, the motion to dismiss for want of personal jurisdiction is granted as to the New Orleans District Director and denied as to the Attorney General. The motion to dismiss for improper venue is denied.

The Court has not yet ordered the respondents, pursuant to 28 U.S.C. § 2243, to show cause why the writ should not be granted. This omission was likely a procedural error, given that § 2243 requires the Court to issue such an order, or the writ itself, forthwith, unless it appears from the face of the petition that the petitioner is not entitled to relief. It is the Court's usual practice to issue such an order at the outset of all non-frivolous habeas corpus proceedings. In this case, it appears the order was not issued as of course because of the unusual procedural beginnings of this case, namely, Roman's motion for a temporary restraining order. In order to rectify this procedural misstep, the Court now orders the respondents to show cause, within 30 days of the date of this order, pursuant to 28 U.S.C. § 2243, why the writ should not be granted. It is not necessary in response to this order that the government repeat its arguments on the merits of Roman's constitutional claims. It is, however, necessary that the return "certif[y]

the true cause of the detention." 28 U.S.C. § 2243.

IT IS SO ORDERED.