**Amu ALLSTON, Petitioner,**

v.

**Michael GAINES, et al., Respondents.**

**No. CIV.A. 00–2915(PFL).**

United States District Court,
District of Columbia.

July 31, 2001.

Paresh Patel, Public Defender Service, Washington, DC, for Plaintiff.

Carol Pasking Epstein, Assistant Corporation Counsel, David C. Woll, Jr./Daniel Miller Cisin, Assistant U.S. Attorney, Washington, DC, for Defendants.

## *OPINION*

PAUL L. FRIEDMAN, District Judge.

This case is before the Court on petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner Amu Allston alleges that the United States Parole Commission was arbitrary and capricious in revoking his parole and issuing an 18–month set-off, that this decision was vindictive, that his due process rights were violated, and that the delay in scheduling his parole revocation hearing prejudiced him. Mr. Allston also claims that the 18–month set-off violated the Ex Post Facto Clause of the Constitution. Upon consideration of the argu-

ments of the parties, the Court denies the petition for writ of habeas corpus.[1]

## I. BACKGROUND

Petitioner Amu Allston is serving aggregate sentences for two separate convictions for distribution of cocaine imposed by the Superior Court of the District of Columbia on April 9, 1992. Mr. Allston was released on parole in May 1999, but he was rearrested on May 9, 2000 for simple assault, destruction of property and unlawful entry for an incident that involved an altercation with his ex-girlfriend, Rainey Duncan. At the time of the alleged incident, a police report was prepared by Darrell Garner, an off-duty police officer who resided in Ms. Duncan's apartment building. See Parole Commission's Response to Court's Order to Show Cause ("Parole Commission's Response"), Appendix G. Officer Garner became alerted to the incident when he heard a loud noise in the hallway outside of his apartment. See id. at 2. As he exited his apartment, Officer Garner observed petitioner walking down the hallway and detained him. See id. Ms. Duncan then informed Officer Garner that Mr. Allston had "kicked in her apartment door and started punching her." Id. As the police report reflects, Ms. Duncan's sister, Tina Duncan, confirmed that petitioner had kicked in the apartment door and punched Rainey Duncan. See id.

The District of Columbia Board of Parole scheduled a parole revocation hearing for July 13, 2000, based on a report submitted by petitioner's Community Service Officer alleging two parole violations: (1) failure to obey all laws, and (2) failure to report on June 5. See Parole Commission's Response, Appendix F. For reasons that the parties do not make entirely clear, the hearing did not take place on July 13, and the Board of Parole issued a warrant for petitioner's arrest. On August 5, 2000, the United States Parole Commission assumed jurisdiction over Mr. Allston pursuant to the National Capital Revitalization and Self Improvement Act of 1997 and rescheduled the revocation hearing for October 3, 2000. See D.C.Code § 24–1231(a). On August 25, 2000, the criminal case on which Mr. Allston's May 9 arrest was based was dismissed in D.C. Superior Court because Ms. Rainey Duncan no longer wanted to press charges. See Petitioner's Response to Commission's Opposition ("Petitioner's Response"), Appendix 2.[2]

At the October 3 revocation hearing, Ms. Duncan testified that she had lied to Officer Garner on the night of the alleged incident because she believed that Mr. Allston was seeing another woman. See Parole Commission's Response, Appendix J at 2. Petitioner's CSO also testified at the hearing, stating that Mr. Allston had failed to contact him after missing a June 5 appointment, tested positive for cocaine on the day he was arrested and had not reported for further testing on May 30. In view of this testimony, the Hearing Examiner, Jasper Clay, made no finding with respect to any of the alleged criminal law violations but did find an administrative

---

1. As a threshold matter, the government argues that this case should be dismissed because petitioner has failed to exhaust his remedies in the Superior Court of the District of Columbia. The Court finds this argument unpersuasive and instead considers Mr. Allston's petition on the merits. See 28 U.S.C. § 2241; Blair–Bey v. Quick, 151 F.3d 1036, 1046–47 (D.C.Cir.1998).

2. A note on the case jacket reads: "Case is dismissed for lack of prosecution; the govt. felt that they could not proceed since the complaining witness has changed her story." See Petitioner's Response, Appendix 2.

violation for Mr. Allston's failure to report on June 5. *See id.* Examiner Clay classified the offense as a Category I parole violation with a salient factor score of 3, for which the Commission guideline range is 12 to 16 months; he recommended a 12–month set-off. *See* Parole Commission's Response, Appendix J at 5.

Petitioner's case was then reviewed by an Executive Hearing Examiner, S.D. Shoquist. *See* 28 C.F.R. § 2.23(a). Examiner Shoquist disagreed with Examiner Clay's conclusion and found that petitioner had committed an act of simple assault upon Ms. Duncan. *See* Parole Commission's Response, Appendix K. As a result, Examiner Shoquist upgraded petitioner's violation to a Category II offense with a salient factor score of 3, for which the Commission guideline range is 16 to 22 months; he recommended an 18–month set-off. *See* Parole Commission's Response, Appendix K.

Under U.S. Parole Commission regulations, the disagreement between Examiners Clay and Shoquist required the case to be reviewed by a third examiner leading to a "panel recommendation." *See* 28 C.F.R. § 2.23(b), (c). The panel unanimously agreed to revoke Mr. Allston's parole but disagreed as to the duration of the revocation. *See* Parole Commission's Response, Appendix M. The Commission then apparently held another vote on October 20 in which two Commissioners voted for an 18–month set-off and one Commissioner voted for a 12–month set-off. *See* Parole Commission's Response, Appendix L. In total, four Commissioners believed that an 18–month set-off was appropriate in petitioner's case while two recommended only twelve months. *See id.*

In its November 6 Notice of Action, the Parole Commission stated in its Findings of Fact that it had made no finding of any criminal violation but still classified the

parole violation as a Category II offense. *See* Parole Commission's Response, Appendix N. On December 4, the Commission issued a corrected Notice of Action in which it found a criminal violation of simple assault listing Officer Garner's police report as its basis. *See* Parole Commission's Response, Appendix O. Petitioner's attorney, however, did not receive a copy of this notice because the Parole Commission sent it to the wrong address. *See id.* at 2. On December 7, Mr. Allston filed this petition. On that same day, petitioner's attorney finally received the corrected Notice of Action.

## II. DISCUSSION

### A. *Petitioner's Parole Revocation Process*

1. The Parole Commission's Decision

Petitioner's primary challenge to the Parole Commission's decision is that it lacks adequate support in the record. Specifically, he attacks Examiner Shoquist's reliance on Officer Garner's police report as hearsay evidence—and in some respects double hearsay—and argues that it should not trump Ms. Rainey Duncan's live testimony at the hearing. He contends that the hearsay evidence is unreliable because no evidence was presented at the hearing to support the police report and because Ms. Duncan's change in testimony is consistent with what she told the Assistant U.S. Attorney handling the case in Superior Court.

 On a petition for a writ of habeas corpus, judicial review of the Parole Commission's decision to revoke parole is narrowly circumscribed. The Court is confined to determining whether there has been an "abuse of discretion," meaning that it may only consider whether there is a "rational basis" in the record to support the Parole Commission's conclusions. *See*

*Gambino v. E.W. Morris,* 134 F.3d 156, 159–60 (3d Cir.1998); *Iuteri v. Nardoza,* 732 F.3d 32, 37 (2d Cir.1984). Furthermore, the Parole Commission need only find a violation of parole conditions by a preponderance of evidence. *See* 18 U.S.C. § 4214(d); 28 C.F.R. § 2.105(a).

▮ Applying this standard, the Court finds that petitioner has not demonstrated the absence of a rational basis for the Parole Commission's finding of a simple assault violation by a preponderance of the evidence. Examiner Shoquist determined that the police report was a more reliable version of the facts than Ms. Duncan's revised testimony. His reasoning for this conclusion is clear: "While Ms. Duncan has subsequently changed her story, which is not unusual in these types of domestic cases, I believe the initial statements as provided to the officer are more believable and credible." Parole Commission's Response, Appendix K. According greater weight to a victim's initial representations rather than to her subsequent contradictory testimony is a legitimate practice of decision-makers engaging in credibility determinations. *See Stinchfield v. Menifee,* 119 F.Supp.2d 381, 385 (S.D.N.Y.2000) (rational to credit police report over subsequent conflicting recantation). Moreover, in this case the police report was written by an individual who not only corroborated Ms. Duncan's statement with the statement of another witness to the alleged assault (Ms. Duncan's sister) but who also witnessed a portion of those events himself.

▮ While the use of hearsay evidence does present the danger of preventing the confrontation and cross-examination of a declarant, petitioner knew the basis for the police report but failed to exercise his opportunity to designate either Officer Garner or Ms. Duncan's sister as witnesses. One can surmise that the reason he did not do so was because he thought they would make clear that Ms. Duncan's original description of what happened—not her subsequent version—was true. Moreover, Ms. Duncan never testified that Officer Garner's report inaccurately reported what she told him on the night in question. Rather, she testified that she lied to him because she was angry at Mr. Allston. In effect, Ms. Duncan's hearing testimony strengthened the reliability of Officer Garner's report as a true and accurate rendition of what was said to him. In view of his own statements about what he personally saw and heard and what Ms. Tina Duncan said, the Court cannot conclude that the Parole Commission's finding of a simple assault violation is void of rationality. Finally, petitioner misunderstands his baseline: it is his duty to demonstrate why the police report is unreliable. Thus, if he wanted to mount a successful challenge to the report, he should have attempted to contradict Tina Duncan and Officer Garner's version of the facts as well.[3]

### 2. Vindictiveness

▮ Petitioner argues that the Parole Commission's December 4 Notice of Action was a *post hoc* rationalization for a base-

---

**3.** Petitioner has also renewed his motion for discovery to determine whether Examiner Shoquist listened to the tape of Mr. Allston's revocation hearing before making his decision. He contends that this information is necessary to resolve his due process claim. The Court disagrees. The guarantee of due process does not invariably require an administrative decision-maker to hear or view a witness's testimony. *See Moore v. Dubois,* 848 F.2d 1115, 1118 (10th Cir.1988); *Utica Mut. Ins. Co. v. Vincent,* 375 F.2d 129, 131–32 (2d Cir.1967); *Guerrero v. State of New Jersey,* 643 F.2d 148, 149–50 (3d Cir.1981); *Bates v. Sponberg,* 547 F.2d 325, 332–33 (6th Cir. 1976).

less 18–month set-off that was imposed because he was preparing to challenge the Commission's actions. *See* Supplement to Petition for Writ of Habeas Corpus at 8–9. There is no evidence to support this claim, and the Parole Commission has explained the discrepancy between the language in the November 6 notice and the language in the December 4 notice: the Commission simply had made a clerical mistake the first time. The Parole Commission is entitled to a presumption of good faith unless it has imposed a more severe sanction in response to a successful appeal or collateral attack or is otherwise shown to have been vindictive; a presumption of vindictiveness is not warranted. *See Maddox v. Elzie*, 238 F.3d 437, 445–47 (D.C.Cir.2001); *Hammond v. D.C. Board of Parole*, 756 A.2d 896 (D.C.2000). The 18–month set-off—a product of the classification of the parole violation as Category II—is supported by objective information in the record. *See Maddox v. Elzie*, 238 F.3d at 446. Accordingly, there is no basis for the Court to find that the Parole Commission acted vindictively in imposing the 18–month set-off.

### 3. Unreasonable Delay

■ Petitioner contends that the delay between the October 3, 2000 hearing and his detention on July 13, 2000 was unreasonable and prejudicial. There is no merit to this argument. Mr. Allston was entitled to a hearing within 90 days of being taken into custody. *See* 18 U.S.C. § 4214(c); *Sutherland v. McCall*, 709 F.2d 730, 732 (D.C.Cir.1983); *see also Morrissey v. Brewer*, 408 U.S. 471, 485, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The revocation hearing was held after Mr. Allston had been detained for 82 days. Thus, the delay was not unreasonable—especially in light of the fact that the delay was partly due to petitioner's indecisiveness as to whether to obtain counsel and call witnesses on his own behalf. Nor did Mr. Allston suffer any prejudice from the delay. Petitioner's claim requires the Court to assume that the Parole Commission only imposed a set-off in order to justify Mr. Allston's detention—a speculative claim that he has not proven.

### B. Ex Post Facto Claim

Petitioner argues that the Parole Commission has violated the Ex Post Facto Clause of the Constitution by applying its own parole revocation guidelines rather than adhering to the regulations of its predecessor, the D.C. Board of Parole. Mr. Allston contends that under the D.C. Board of Parole's regime he would have been subject to only a 9 to 15 month revocation of his parole. Instead, petitioner was subject to an increased parole revocation term of 16 to 22 months because the U.S. Parole Commission guidelines were invoked. Thus, Mr. Allston argues that he received three months more than would have been permissible under the D.C. Board of Parole guideline system.

Article I, Section 9, clause 3 of the United States Constitution prevents Congress from passing ex post facto laws. The clause has been interpreted as a prohibition on the enactment of any law that "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); *see Garner v. Jones*, 529 U.S. 244, 249–50, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). The government argues that the Parole Commission's guidelines can never be considered "laws" for the purposes of ex post facto analysis. Most circuits that have considered the question agree with

this proposition.[4] As the Seventh Circuit has said: "The power to exercise discretion indicates that the guidelines are merely guides, and not laws: guides may be discarded where circumstances require; laws may not.... The key to the finding that guidelines are guides merely, and not laws, is that the Parole Commission has a congressional mandate ... to exercise discretion." *Inglese v. United States Parole Commission*, 768 F.2d at 936–37. To conclude otherwise ignores the fact that the Parole Commission is not required to follow the guidelines in every case but has the discretion to depart upwards or downwards when the circumstances warrant. *See* 18 U.S.C. § 4206(c); 28 C.F.R. § 2.20(c).

The Third Circuit has identified circumstances in which the guidelines could be considered laws for ex post facto purposes. *See United States ex rel. Forman v. McCall*, 776 F.2d 1156, 1158 (3d Cir.1985) ("if administered without sufficient flexibility, the guidelines could be considered laws for ex post facto purposes"). Under the Third Circuit's approach, a court would need to evaluate whether the Parole Commission has discretion under the guidelines and how much discretion it has, including undertaking a statistical evaluation of the percentage of cases in which the Commission issues set-offs outside the range of months specified in the guidelines. The court of appeals in this Circuit has not directly ruled on the question of whether the guidelines could be considered laws for ex post facto purposes but has effectively endorsed a test similar to that employed by the Third Circuit. *See Blair–Bey v. Quick*, 151 F.3d 1036, 1049 n. 12. (D.C.Cir.

1998); *Warren v. United States Parole Commission*, 659 F.2d 183, 197 n. 57 (D.C.Cir.1981).

In *Blair–Bey*, the court explained that a petitioner like Mr. Allston could demonstrate the applicability of the ex post facto analysis if he could show that (1) there is a sufficiently great risk of disadvantaging a particular category of inmates, (2) the guidelines were motivated by a desire to punish certain types of prisoners, and/or (3) the guidelines are never ignored, which means that in practice there is no exercise of discretion. *See Blair–Bey v. Quick*, 151 F.3d at 1049. On rehearing, the court stated that the hurdle to show that ex post facto analysis applies is very high; for a petitioner to succeed, he would need to show that "at a minimum ... the [Commission's] discretion under the guidelines is totally or very substantially circumscribed in law or in fact and yields results materially harsher than those ordinarily occurring under the prior regime." *Blair–Bey v. Quick*, 159 F.3d 591, 592 (D.C.Cir.1998). Even applying this test, the Court still finds that petitioner is not entitled to habeas corpus relief.

First, Mr. Allston has failed to demonstrate that the results under the prior regime would be less harsh. Petitioner argues that under the D.C. Board of Parole regulations, Mr. Allston's set-off would have been from 9 to 15 months whereas the U.S. Parole Commission guidelines provide that the set-off must be between 16 and 22 months. This comparison is deceptive. Under the old D.C. Board of Parole rules, the 9 to 15 month range defined when a prisoner was entitled

---

4. *See Sheary v. United States Parole Commission*, 822 F.2d 556, 558 (5th Cir.1987); *Wallace v. Christensen*, 802 F.2d 1539, 1553–54 (9th Cir.1986); *DiNapoli v. Northeast Regional Parole Commission*, 764 F.2d 143, 145–47 (2nd Cir.1985); *Inglese v. United States Parole Commission*, 768 F.2d 932, 936–39 (7th Cir. 1985); *Dufresne v. Baer*, 744 F.2d 1543, 1549–50 (11th Cir.1984); *Ruip v. United States*, 555 F.2d 1331, 1334–36 (6th Cir. 1977); *but see United States ex rel. Forman v. McCall*, 776 F.2d 1156, 1158 .(3d Cir.1985).

to a reparole hearing, *not* the date on which the prisoner would actually be reparoled. *See* Petitioner's Response, Appendix A (old D.C. regulations set forth when petitioner was entitled to reconsideration of parole).[5] Under the U.S. Parole Commission guidelines, Mr. Allston will be reparoled automatically after 18 months; this period of time does not merely represent when he is entitled to a new hearing. As was the case in *Warren,* petitioner's challenge therefore must fail because he cannot show that he is worse off under the present regime when compared to the prior regime. *See Warren v. United States Parole Commission,* 659 F.2d at 193.

■ Second, under the analytical framework announced by the Third Circuit, the statistical evidence—if statistical evidence by itself is enough to demonstrate substantially limited discretion—does not prove that the Parole Commission's discretion is substantially limited in this case. Petitioner contends that the discovery obtained from the government shows set-offs below the guidelines in only 4% of the cases—a figure too low to demonstrate that the Parole Commission has retained substantial flexibility under the guidelines. But petitioner's characterization is misleading because the issue in determining how much discretion the Parole Commission has under the guidelines rests on an analysis of how often the Commission gives set-offs outside the guidelines—either below *or* above the guidelines, not just below the guidelines. *See United States ex rel. Forman v. McCall,* 776 F.2d at 1163. Taking the set-offs above the guidelines into account (30% of the cases by one calculation and 16% of the cases by another), the total number of

departures rises to a conservative 20% or perhaps as much as 34%. *See* Parole Commission's Reply to Petitioner's Response at 9. The 20% departure rate alone is sufficient to show that the Parole Commission retains significant discretion under the guidelines and certainly a departure rate in which 34% of all cases fall outside the guidelines demonstrates sufficient discretion and flexibility. *See United States ex rel. Forman v. McCall,* 776 F.2d at 1163 (25% deviation from guideline ranges allowed court to conclude that there was sufficient flexibility such that the guidelines were not considered laws for ex post facto purposes).

For all of these reasons, the Court concludes that the application of the U.S. Parole Commission guideline system in this case does not offend the Ex Post Facto Clause of the Constitution.

## III. CONCLUSION

Since Mr. Allston has failed to articulate any reason why he is entitled to habeas corpus relief, his petition for writ of habeas corpus is denied. An Order consistent with this Opinion shall be issued this same day.

SO ORDERED.

### *ORDER AND JUDGMENT*

For the reasons stated in the Opinion accompanying this Order and issued this same day, it is hereby

ORDERED that the Order to Show Cause is DISCHARGED; and it is

FURTHER ORDERED that the petition for a writ of habeas corpus is DE-

---

5. For instance, if Mr. Allston had been sent back to prison under the old regulations for 12 months, he might be reparoled after a year or his parole could be denied and he might remain in jail for a significantly longer time. *See Brandon v. District of Columbia Board of Parole,* 823 F.2d 644, 645–46 (D.C.Cir.1987).

NIED and this case is DISMISSED. This is a final appealable order.

SO ORDERED.