Byron GANT, Petitioner,

v.

Edward F. REILLY, Jr., et al., Respondents.

No. Civ.A. 02–858(RBW).

United States District Court, District of Columbia.

Sept. 11, 2002.

Hastings Jones, Public Defender Service, Washington, D.C., for petitioner.

Daniel M. Cisin, United States Attorney's Office, Special Proceedings Section, Washington, D.C., for respondents.

### MEMORANDUM OPINION

WALTON, District Judge.

This matter comes before the Court upon a Petition for a Writ of Habeas Corpus ("Pet.") that was filed pursuant to 28 U.S.C. § 2241 (2000), seeking review of the United States Parole Commission's ("U.S. Commission") decision to revoke the petitioner's parole. The petitioner alleges that: (1) this Court should entertain his petition because he is not required to ex-

haust the habeas remedies available to him in the Superior Court of the District of Columbia ("Superior Court") because only a United States District Court has authority to exercise jurisdiction over the U.S. Commission; and (2) the U.S. Commission failed to appropriately consider the evidence before it when rendering its decision to revoke the petitioner's parole. Upon consideration of the parties' submissions and for the reasons set forth below, the Court must grant the petition for a writ of habeas corpus.

## I. *Factual Background*

The petitioner, Byron Gant, was convicted in Superior Court of robbery and unauthorized use of a vehicle, and was sentenced to concurrent terms of imprisonment of four to twelve years and one to three years, respectively. United States' Opposition to Petitioner's Petition for a Writ of Habeas Corpus ("Opp'n") at 3.[1] The petitioner was paroled in May 1998 by the District of Columbia's Board of Parole ("D.C.Board"), which thereafter revoked the grant of parole on October 13, 1999, due to the petitioner's illegal use of a controlled substance and failure to report to his parole officer. *Id.* Subsequently, the U.S. Commission ordered the petitioner's re-parole as of November 21, 2000, subject to his participation in a drug treatment program.[2] *Id.* However, the U.S. Commission rescinded the date of petitioner's re-parole and postponed it for one year, to November 21, 2001, because the petitioner had absconded from a halfway house where he had apparently been

placed pending his release to parole. *Id.* at 3–4.

### (1) *The Petitioner's Re–Arrest*

The circumstances that resulted in the parole revocation decision that is at issue in this case commenced less than one month after the petitioner was ultimately re-paroled, when he was re-arrested on December 14, 2001, and charged with possession with intent to distribute cocaine while armed and possession of marijuana. *Id.* at 4. According to the arrest report, two Metropolitan Police Department ("MPD") officers approached a vehicle in the District of Columbia in which the petitioner was sitting in the front passenger seat. The officers smelled "a strong pungent odor consistent with the smell of marijuana emitting from the vehicle." *Id.* (quoting Opp'n Exhibit ("Ex.") E). One of the MPD officers also observed the driver with an open container of alcohol and requested that the two occupants of the vehicle, the driver and the petitioner, exit the vehicle. *Id.* (quoting Opp'n Ex. E). The driver was arrested for possessing the open container of alcohol and a search and inventory of the vehicle incident to the driver's arrest

> revealed in the center console between the driver and the passenger seats a brown paper bag containing 41 small ziplock bags (7 green and 34 clear) containing an off white rock like substance which field tested a positive color reaction for cocaine, two clear ziplock bags containing small clear ziplock bags, one clear plastic bag containing small green

---

1. The petitioner subsequently received a ninety-day concurrent sentence for a prison breach conviction.

2. Parole authority over the petitioner was apparently transferred from the D.C. Board to the U.S. Commission pursuant to the National Capital Revitalization and Self-Government

Improvement Act of 1997, Pub.L. No. 105–33, § 11231(a)(1), 111 Stat. 712, 745 ("Revitalization Act"); *see* D.C.Code § 24–131(a)(1) (2001), between the revocation of the petitioner's parole on October 13, 1999, and the re-parole decision that was made on November 21, 2000.

zip lock bags, and two razor blades ... Also recovered from the center console was a clear plastic bag and one piece of white paper containing a green weed like substance, which field-tested a positive color reaction for THC. A fully loaded .40 caliber Beretta semi-automatic gun ... was recovered in the seat pocket behind the front passenger. A black Coogi sweat jacket size 3X was on the back seat passenger side of the vehicle. Inside the right jacket pocket was [a] clear plastic bag containing large off white rock like substance weighing 26 grams, which a portion of, field-tested a positive color reaction for cocaine. [The petitioner and driver] were placed under arrest and charged with PWID crack cocaine while armed, possession of marijuana, and possession of drug paraphernalia.

*Id.* (quoting Opp'n Ex. E). The criminal charges against the petitioner were subsequently "no-papered" by the government on December 15, 2001.

### (2) *The Petitioner's Parole Revocation Hearing*

Upon becoming aware of the petitioner's arrest, the U.S. Commission conducted a parole revocation hearing on April 4, 2002, based on the following parole violation charges: (1) the "use of dangerous habit-forming drugs" that was detected by four positive drug tests for cocaine in December 2001, and (2) violating the law by committing the offenses of possession of cocaine with intent to distribute while armed, possession of marijuana, and associating with a person involved in criminal activity, *i.e.,* the person the petitioner was with at the time of his arrest. Hearing Transcript ("Tr.") at 9–10. At the outset

of the hearing, the petitioner admitted to the first charge that was based on his positive drug tests. *Id.* at 9. Because the petitioner denied the second charge, the hearing examiner conducted a hearing, during which MPD Officer E. Bader, Municipal Division Officer Jeffrey Barlow,[3] and the petitioner's probation officer Anthony Taylor testified. In addition to recalling the version of events contained in the arrest report at this hearing, Officer Bader provided several additional, relevant facts regarding this incident. The Court finds it significant that Officer Bader testified at the parole revocation hearing that the contraband was found in a car owned by the driver of the vehicle and that "[a]s soon as [she] lifted up the center console, which is between the driver's seat and the passenger seat, [she] lifted up that glove compartment console and observed a large quantity of drugs in the vehicle." *Id.* at 16. Officer Bader also testified that there were no drugs found on the petitioner, *id.* at 19, that she did not see the petitioner using any marijuana, *id.* at 26, and described the petitioner's reaction upon the drugs being found in the car as "he was upset; I mean surprised ... He kept saying they weren't his. He had just got into the car about five minutes ago, five minutes prior to this happening[,]" *id.* at 22. In addition, Officer Bader testified that the weapon discovered in the vehicle was located in the "map pocket behind the passenger seat" and that it was more accessible to the driver than to the petitioner. *Id.* at 23.

The petitioner's attorney proffered to the hearing examiner that had the petitioner's wife and daughter been able to attend the hearing, they would have testi-

---

**3.** Mr. Barlow and the petitioner's probation officer, Mr. Taylor, are partners and both work in the probation office. Tr. at 42. Apparently, Mr. Barlow was participating in a ride-along with the MPD and observed the petitioner's arrest. *Id.* Mr. Barlow's recollection of the events of that evening corroborated MPD Officer Bader's version.

fied that on the night in question they were all walking from the petitioner's wife's friend's house to the petitioner's house when he recognized a vehicle belonging to an acquaintance and decided to say "hello". *Id.* at 31–33. The petitioner declined to testify about the events in question, invoking his Fifth Amendment privilege on the advice of his attorney. *Id.* at 34.

> At the conclusion of the hearing, the U.S. Commission's examiner held that his recommendation is to make a finding of violation on the charge that he admitted to as the cocaine, is abuse of dangerous habit-forming drugs, and to the law violation, which is possession with intent to distribute cocaine and possession of the gun. *I think that Mr. Gant had constructive possession of both gun and drugs while he was in that car, and the testimony that I have, that the Commission has or that I heard, put him in the car with the gun and the drugs, and that is constructive possession.*

Tr. at 70 (emphasis added). In his written report detailing his findings, the hearing examiner stated that "the testimony of Officer Bader and CSO Barlow was credible and sufficient to make a finding of the law violation charge that the subject was in constructive possession of the gun and the drugs that were found ..." Opp'n Ex. F at 4. In recommending that petitioner's parole be revoked, the examiner cited the fact that the petitioner "had only been under parole supervision for less than one month before this violation occurred. He has a long history of violent offenses and he has had the opportunity of parole on several occasions." Opp'n Ex. F at 5. On April 23, 2002, the U.S. Commission adopted the hearing examiner's findings of

fact and issued an order revoking the petitioner's parole based upon the two charged violations and re-instated the petitioner's incarceration until the expiration of his sentence. Opp'n Ex. G at 1. The U.S. Commission's stated reasons were because the petitioner's

> *parole violation behavior [was] rated as Category Five severity because it involved both criminal* and administrative violations, *specifically Distribution or possession with intent to distribute 10 grams or more of free-based cocaine, the actual grams recorded was over 26 grams.* [His] new salient factor score is 2 ... Guidelines established by the Commission indicate a customary range of 60–72 months to be served before release. After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted.

*Id.* (emphasis added). Finally, it is noteworthy that in the respondents' opposition, they observed that "the Commission established petitioner's reparole guidelines under 28 C.F.R. § 2.81 based *only* upon the finding that petitioner had possessed with intent to distribute over 26 grams of freebased (crack) cocaine", Opp'n at 6 (emphasis added), and scheduled the petitioner for a statutory review hearing during April 2004, Opp'n Ex. G at 1. At the time of the filing of his petition, the petitioner was incarcerated at the District of Columbia's Correctional Treatment Facility ("CTF").[4]

## II. *Legal Analysis*

### (1) *Jurisdictional Analysis*

Prior to deciding the merits of a case, a court must first determine whether it has jurisdiction to entertain the case. *See Ex*

---

**4.** D.C.Code § 24–261.03 (2001) states that "[a]n inmate confined in the CTF shall be deemed to be at all times in the legal custody of the [District of Columbia] Department of Corrections."

*Parte McCardle,* 74 U.S. 506, 7 Wall. 506, 514, 19 L.Ed. 264 (1868). The petitioner has filed this petition pursuant to 28 U.S.C. § 2241, seeking a writ of habeas corpus from this Court based on the U.S. Commission's decision to revoke his parole, which he had been placed on as a result of a conviction in the Superior Court. While acknowledging that this Court has concurrent jurisdiction with the Superior Court to entertain the petitioner's writ of habeas corpus petition, Opp'n at 8, the respondents assert that, because the petitioner failed to first petition the Superior Court for habeas relief, this Court is precluded from entertaining his petition until the District of Columbia courts have been given the opportunity to consider whether the petitioner is entitled to relief. However, the respondents' position, although seemingly straightforward, actually implicates a myriad of issues and therefore this Court finds itself venturing into what are virtually unchartered waters without at least the safety net of legal precedent that has exhaustively addressed the Revitalization Act and its implications on the Superior Court's authority to review a petitioner's habeas corpus challenge that entails a review of the U.S. Commission's actions.[5]

In 1970, Congress enacted the District of Columbia Court Reform and Criminal Procedure Act, Pub.L. No. 91–358 (1970) ("Court Reorganization Act") which established the current "dual court system." *Blair–Bey v. Quick,* 151 F.3d 1036, 1042 (D.C.Cir.1998). The Court Reorganization Act included two statutes, D.C.Code § 16–1901 (2001) and D.C.Code § 23–110 (2001), that are analogous to the relationship that exists between 28 U.S.C. § 2241 and 28 U.S.C. § 2255 (2000), wherein "the former provides a broad habeas corpus remedy, [and] the latter a specific instrument for attacking a conviction or sentence." *Blair–Bey,* 151 F.3d at 1043 n. 6. Because the petitioner has filed his petition for a writ pursuant to 28 U.S.C. § 2241 and therefore seeks broad habeas relief on the grounds that the U.S. Commission improperly revoked his parole, rather than narrowly attacking his conviction or sentence, this Court will look to D.C.Code § 16–1901 to determine whether the petitioner is able to obtain an effective remedy in Superior Court if his petition has merit. Section 1901 of Title 16 of the District of Columbia Code provides that

(a) A person committed, detained, confined or restrained from his lawful liberty within the District, under any color or pretense whatever, or a person in his behalf, may apply by petition to the appropriate court, or a judge thereof, for a writ of habeas corpus, to the end that the cause of the commitment, detainer, confinement, or restraint may be inquired into. The court or judge applied to, if the facts set forth in the petition make a prima facie case, shall forthwith grant the writ, directed to the officer or other person in whose custody or keep-

---

5. In a recent opinion by another member of this Court, *Owens v. Gaines,* 219 F.Supp.2d 94 (D.D.C.2002), Judge Sullivan addressed the mandatory exhaustion of District of Columbia habeas corpus remedies under circumstances in which the petitioner was on parole under the supervision of the U.S. Commission. While in that situation the petitioner was in custody of the U.S. Commission, *see, e.g., Guerra v. Meese,* 786 F.2d 414 (D.C.Cir.1986) ("When the appellees are pa-

roled, if ever, the Parole Commission might then be considered their custodian, within the meaning of the habeas corpus statute."), in this case, because the petitioner is incarcerated in the CTF and serving the remainder of a sentence imposed in the Superior Court, he is in the custody of the warden, who is a District of Columbia official, *id. see* D.C.Code § 24–261.03. Therefore, while helpful, *Owens* is not directly on point.

ing the party so detained is, returnable forthwith before the court or judge.

*(b) Petitions for writs directed to Federal officers and employees shall be filed in the United States District Court for the District of Columbia.*

(c) Petitions for writs directed to any other person shall be filed in the Superior Court for the District of Columbia.

(emphasis added). In *Blair–Bey*, the District of Columbia Circuit concluded that federal courts are not precluded by D.C.Code § 16–1901 from entertaining habeas corpus petitions filed by District of Columbia prisoners under 28 U.S.C. § 2241 because "[s]ections 16–1901(b) and (c) only set forth the proper place in which to file those habeas corpus petitions that are brought pursuant to section 16–1901(a). They do not speak to the question of where persons may file habeas petitions that are brought under *other* sources of authority, such as section 2241." 151 F.3d at 1043 (emphasis in the original) (finding that a petitioner can file a habeas corpus petition under 28 U.S.C. § 2241 in either the District Court or the Superior Court). Moreover, the Circuit Court stated in *Blair–Bey* that "sections 16–1901 and 2241 are properly conceived of as distinct, equally available avenues by which D.C. petitioners may seek habeas corpus." *Id.* at 1044.

In the instant case, the petitioner has directed his § 2241 writ of habeas corpus petition to the Commissioners of the United States Parole Commission, all federal officials, and to several District of Columbia Corrections officials, including the warden of the District of Columbia penal institution where the petitioner is currently detained.[6] Thus, at first glance, because the petitioner has directed his § 2241 petition to federal officials, this Court would appear to be the proper forum to entertain his petition because, even if the petitioner had filed a § 16–1901 petition in the Superior Court, the venue provision embodied in § 16–1901(b) dictates that the petition had to be filed in this Court. *See Blair–Bey*, 151 F.3d at 1044 ("The most natural construction of sections 16–1901(b) and (c) is that they are venue provisions applicable only to petitions for habeas corpus made under section 16–1901 itself."). However, the respondents maintain that although this Court has jurisdiction to entertain the Petition, there is nonetheless an independent requirement that the petitioner must first exhaust available District of Columbia remedies.[7] Thus, while the Circuit's broad language in *Blair–Bey* that "sections 16–1901 and 2241 are properly conceived of as distinct, equally available avenues by which D.C. petitioners may seek habeas corpus," *Id.* at 1044, and the venue provision in D.C.Code § 16–1901(b) suggest that this Court should entertain the peti-

---

6. The petitioner has directed his writ of habeas corpus petition to the following District of Columbia officials: the Director of the Department of Corrections, the Warden of the Central Detention Facility, and the Warden of the Correctional Treatment Facility.

7. The government also asserts in a footnote in its opposition that "all respondents except for the Warden of the Central Dete[n]tion Facility should be dismissed because the sole appropriate respondent in habeas corpus is the 'person having custody of the person detained.'" Opp'n at 8 n. 1 (citing *Guerra v.*

*Meese*, 786 F.2d 414 (D.C.Cir.1986)). While it is generally true, that for writs of habeas corpus petitions filed pursuant to § 2241, the warden of the penal institution where the petitioner is incarcerated is the only necessary defendant, *see Guerra*, 786 F.2d at 416, the Court finds it unnecessary to address that question here due to the relief it has decided to impose. If, on the other hand, the Court deemed it necessary to direct a federal official to act, the federal official (or agency) might have to be considered a necessary party to ensure that appropriate relief is afforded.

tioner's writ of habeas corpus, the respondents rely on this Circuit Court's opinion in *Maddox v. Elzie*, 238 F.3d 437, 442 (D.C.Cir.2001), and an opinion by another member of this Court in *Bailey v. Quick*, 191 F.Supp.2d 7 (D.D.C.2001), for the proposition that the exhaustion of District of Columbia remedies is a prerequisite to filing a petition for a writ of habeas corpus pursuant to § 2241 in this Court.

In *Maddox*, the Circuit Court reached the merits of the petitioner's challenge to his detention, but declined to address whether a petitioner must first exhaust his remedies under District of Columbia law when filing for a writ pursuant to § 2241, because the petitioner's claim lacked merit. 238 F.3d at 442 (stating that while the District of Columbia has been treated as a State for the purpose of imposing the appeal requirements of 28 U.S.C. § 2253(c)(1) (2000) to habeas petitions filed under 28 U.S.C. § 2241, "[w]hatever the logical import" of imposing § 2253(c)(1)'s appeal requirement has on the initiation of a § 2241 action prior to the exhaustion of District of Columbia habeas remedies did not have to be addressed because the petitioner's challenge to his detention was meritless).[8] In addition, the *Maddox* Court, commenting on the same exhaustion argument being raised here and that was being advanced in that case by the D.C. Board, noted that "[t]he court was not confronted in *Blair–Bey* with an exhaustion issue because the defendant in that case had, in fact, exhausted his remedies under District of Columbia law." *Id.* In *Bailey*, Judge Urbina of this Court dismissed the petitioner's § 2241 writ of habeas corpus petition because he had

failed to exhaust his District of Columbia remedies. Despite what occurred in *Maddox* and *Bailey*, neither case provides direct support for the respondents' position in the instant case, as the Courts in both cases were addressing challenges to parole revocation decisions made by the D.C. Board and not the U.S. Commission. Therefore, while the Court need not address whether a District of Columbia prisoner generally must first exhaust his local habeas remedies provided by 16 D.C.Code § 1901 prior to seeking a writ under 28 U.S.C. § 2241, the transfer of parole authority over felony offenders convicted in Superior Court from the D.C. Board to the U.S. Commission, as a result of the enactment of the Revitalization Act, impacts on the applicability of the exhaustion requirement to this case.

### (A) *Exhaustion of State & Local Habeas Corpus Remedies*

 The rule that requires the exhaustion of available state level remedies in an action of this type prior to a federal court considering the merits of a habeas corpus petition is well embodied in the law. As Justice Frankfurter commented, "[t]he problem represented by this [issue] is as old as the Union and will persist as long as our society remains a constitutional federalism. It concerns the relation of the United States and the courts of the United States to the States and the courts of the States." *Irvin v. Dowd*, 359 U.S. 394, 407, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959) (Frankfurter, J., dissenting). It is therefore not surprising that the Supreme Court in *Irvin* stated that "[o]rdinarily an application

**8.** As the Circuit Court in *Maddox* did not express an opinion about whether the District of Columbia is to treated as a State for exhaustion purposes in connection with the filing of a writ of habeas corpus petition pursuant to § 2241, 238 F.3d at 442, this Court's

Opinion is limited to the circumstances of this case, *i.e.*, a petitioner originally convicted in the Superior Court who is now incarcerated in a District of Columbia facility pursuant to a parole revocation decision by the United States Parole Commission.

for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted." *Id.* at 405, 79 S.Ct. 825 (quoting *Ex parte Hawk*, 321 U.S. 114, 116–17, 64 S.Ct. 448, 88 L.Ed. 572 (1944)). The Court explained in *Darr v. Burford*, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950) that

since the 1867 statute granted jurisdiction to federal courts to examine into alleged unconstitutional restraint of prisoners by state power it created an area of potential conflict between state and federal courts. As it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, the federal courts sought a means to avoid such collisions. Solution was found in the doctrine of comity between courts, a doctrine which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

*Id.* at 204, 70 S.Ct. 587. Such a requirement has been codified both in 28 U.S.C. § 2254 and D.C.Code § 23–110.[9] While it is clear that a prisoner must exhaust his

remedies in the District of Columbia court system pursuant to 28 U.S.C. § 2254 and D.C.Code § 23–110 when attacking the legality of detention resulting from a Superior Court conviction or sentence, the District of Columbia Circuit has not decided whether the same requirement holds true for general habeas corpus relief sought pursuant to 28 U.S.C. § 2241 when, as in this case, a petitioner attacks the legality of a parole revocation decision, even in the pre-Revitalization Act context. *See Maddox*, 238 F.3d at 442. To resolve whether exhaustion should be required in this case, the Court finds it necessary to further examine the rationale behind the exhaustion doctrine and whether its rationale is applicable to the petitioner's circumstances.

The rationale behind the mandatory exhaustion of local remedies in the context of habeas corpus relief is

'to give preference to such principles and methods of procedure as shall seem to conciliate the distinct and independent tribunals of the states and of the Union, so that they may co-operate as harmonious members of a judicial system co-extensive with the United States, and submitting to the paramount authority of the same constitution, laws, and federal obligations', quoting *Taylor v. Carryl*, 61 U.S. 583, 595, 20 How. 583, 15 L.Ed. 1028 (1857), ... [and] the forbearance which courts of co-ordinate

---

9. 28 U.S.C. § 2254(b)(1) states that:

 An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
 (A) the applicant has exhausted the remedies available in the courts of the State; or
 (B)(i) there is an absence of available State corrective procedures; or
 (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

 D.C.Code § 23–110 states that:

 An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be entertained by the Superior Court or by any Federal or State court if it appears that the applicant has failed to make a motion for relief under this section or that the Superior Court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of the other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States it is something more. It is a principle of right and of law, and therefore of necessity,' quoting *Covell v. Heyman*, 111 U.S. 176, 182, 4 S.Ct. 355, 28 L.Ed. 390 (1884).

*Ex Parte Royall*, 117 U.S. 241, 254, 6 S.Ct. 734, 29 L.Ed. 868 (1886). The Court finds it noteworthy that while the doctrine of comity and, therefore, the exhaustion of the state remedies requirement, naturally encompass those circumstances in which the petitioner's detention is a direct result of a state court conviction and sentence, *i.e.*, 28 U.S.C. § 2254 and D.C.Code § 23–110, the same cannot be said about the anomalous situation where the detention of a District of Columbia Code offender who was convicted in Superior Court resulted from the revocation of his parole by a federal agency. This is because the alleged due process violation is not the result of a state-level court's exercise of its judicial power, in which comity requires that such courts be given the first opportunity to correct the alleged violations, but arise from an exercise of a federal agency's discretion pursuant to a Congressional delegation of power, here the Revitalization Act. Although the Court in this case must decide whether an order of release should be directed to the local warden where the petitioner is detained, that determination can only be made after reviewing the decision of the federal parole authority. Accordingly, the Court does not find the rationale behind the exhaustion of state remedies doctrine applicable to this situation.

**(B)** *The District of Columbia Court System and the Revitalization Act*

■ Prior to the enactment of the Court Reorganization Act in 1970, the local District of Columbia courts consisted of an appellate court and three trial courts: two courts of special jurisdiction and a third, the District of Columbia Court of General Sessions, whose jurisdiction was concurrent with this Court's jurisdiction over District of Columbia Code ("D.C.Code") misdemeanors and petty offenses. *Palmore v. United States*, 411 U.S. 389, 393 n. 2, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973) (citing D.C.Code § 11–963 (1967)). At that time, this Court also had exclusive jurisdiction over felony offenses prosecuted under the D.C.Code and it therefore "was filling the role of both a local and federal court." *Id.* Pursuant to its plenary power embodied in Article I, Section 8, Clause 17 of the Constitution (Congress shall have power "[t]o exercise exclusive Legislation in all Cases whatsoever, over" the District of Columbia), *id.* at 397, 93 S.Ct. 1670, Congress enacted the Court Reorganization Act and "invested the local courts with jurisdiction equivalent to that exercised by state courts." *Id.* at 393 n. 2, 93 S.Ct. 1670. Thus, when the Court Reorganization Act created the Superior Court, it granted virtually exclusive jurisdiction over all criminal cases brought under the D.C.Code,[10] D.C.Code § 11–923(b), and its civil jurisdiction extended to all matters at law or in equity brought in the District, "except those in which exclusive jurisdiction was vested in the United States District Court", D.C.Code § 11–921. *Id.* Three

---

**10.** D.C.Code § 11–502(3) provides that this Court shall have jurisdiction over any offense joined in the same information or indictment with a Federal offense. *Palmore,* 411 U.S. at 393 n. 2, 93 S.Ct. 1670.

years later, Congress enacted the District of Columbia Self–Government and Governmental Reorganization Act Government Reorganization Act, Pub.L. No. 93–198, 87 Stat. 774 (December 24, 1973) and "transferr[ed] certain functions previously performed by federal agencies to the District of Columbia government ... [and] delegated some of its legislative authority under Article I, Section 8, Clause 17 of the United States Constitution to a new District of Columbia government". *Jenkins v. Washington Convention Ctr.*, 236 F.3d 6, 12 (D.C.Cir.2001). Under this new scheme, the D.C. Board was empowered to conduct all parole hearings for offenders who were incarcerated in District of Columbia Department of Corrections facilities while the D.C. Board had an arrangement with the U.S. Commission to "conduct[ ] parole hearings (under D.C. parole rules) for those D.C.Code offenders being held in federal prison." *Blair–Bey*, 151 F.3d at 1038.

■ However, with the 1997 enactment of the Revitalization Act, Congress has now placed sole authority over all parole decisions regarding District of Columbia Code felony offenders convicted in Superior Court with the U.S. Commission. Pub.L. 105–33, 111 Stat. 712; D.C.Code § 24–131(a)(2) (2001). Thus, felony offenders convicted in Superior Court who are parole eligible or under parole supervision now have their parole decisions made by the U.S. Commission, while the Superior Court exercises such authority over misdemeanants. D.C.Code §§ 24–131(a)(2)–(3). Congress' use of its plenary power in exercising control over the District of Columbia and its ability to legislate as it deems appropriate has been discussed by the Supreme Court, which stated that

> [n]ot only may statutes of Congress of otherwise nationwide application be applied to the District of Columbia, but Congress may also exercise all the police and regulatory powers which a state legislature or municipal government would have in legislating for state or local purposes. Congress 'may exercise within the District all legislative powers that the legislature of a state might exercise within the State, and may vest and distribute the judicial authority in and among courts and magistrates, and regulate judicial proceedings before them, as it may think fit, so long as it does not contravene any provision of the constitution of the United States.'

*Palmore*, 411 U.S. at 397, 93 S.Ct. 1670 (quoting *Capital Traction Co. v. Hof*, 174 U.S. 1, 5, 19 S.Ct. 580, 43 L.Ed. 873 (1899)). With the enactment of the Revitalization Act, Congress has taken its delegation of parole authority away from the District of Columbia government and has returned it to the federal government. While the Revitalization Act has created an odd jurisdictional structure for handling D.C.Code felony offenders who were prosecuted in the Superior Court and remain eligible for parole—prosecution in a local court system with jurisdiction equivalent to that of a state court, with parole jurisdiction vested in the federal parole authority—Congress undoubtedly had the authority to do what it did. But the creation of this structure came without an answer to the dilemma now confronting this Court, i.e., whether a District of Columbia Code offender who was prosecuted in the Superior Court but is detained in that case in a District of Columbia facility as the result of actions by the federal parole authority should be required to exhaust his District of Columbia habeas remedies before this Court entertains the challenge to his detention.

(C) *Ability of the Superior Court to Review a Decision by the U.S. Commission*

■ The implication of the respondents' mandatory exhaustion position, if the

Court accepts it, would necessarily mean that for the petitioner to exhaust his local habeas remedies, the actions of the U.S. Commission will have to be scrutinized by the Superior Court since the petitioner's current detention is solely due to a decision rendered by the U.S. Commission. And, it is that decision which the petitioner is challenging. However, absent express language in the Revitalization Act authorizing such a review, this Court cannot give its approval to such an arrangement. As the local District of Columbia courts are Article I courts, created by Congress, this Court is unaware of any delegation by Congress to the Superior Court to review the actions of the U.S. Commission. The Court finds that the plain language of the Revitalization Act demonstrates that Congress desired to return parole authority over felony offenders in the District of Columbia to the federal government, while only parole authority over misdemeanor offenders remains with the Superior Court. 111 Stat. 745, Pub.L. 105–33, § 11231; D.C.Code § 24–131. This Court is unable to fathom that Congress, in an effort to curtail the District of Columbia's authority over the parole supervision of felony offenders, would, in the same exercise, grant the local courts the power to review the parole determinations of the federal parole authority without even a hint in the language of the statute that it contemplated that result.

▪ It is particularly significant that the U.S. Commission is an administrative agency and pursuant to 18 U.S.C. § 4218(d) (2000) its decisions regarding the modification or revocation of an individual's parole under 18 U.S.C. § 4203(b) (2000) are "actions committed to agency discretion for purposes of [the Administrative Procedures Act] section 701(a)(2) of title 5, United States Code." 18 U.S.C. § 4218(d); *see Jones v. BOP*, 903 F.2d

1178, 1182 (8th Cir.1990). As the U.S. Commission's revocation of the petitioner's parole was an action by a federal agency, absent clear statutory language by Congress granting the Superior Court jurisdiction to review the U.S. Commission's decisions, judicial review is proper only by a federal district court. This is because "[s]uits against federal officers or agencies arise under the laws of the United States, unless a statute precludes judicial review, and thus 28 U.S.C. § 1331 provides a basis for subject matter jurisdiction." *City of Beloit v. Local 643 of the Am. Fed'n of State, County and Mun. Employees, AFL–CIO*, 248 F.3d 650, 654 (7th Cir.2001) (citing *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). An example of Congress' intent to grant specific courts jurisdiction over a decision by a federal agency was addressed by the Supreme Court in *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958). In that case, the Court explained that the Federal Power Act vested exclusive jurisdiction for the review of orders issued by the Federal Power Commission in the United States Court of Appeals in the Circuit where the licensee or the public utility to whom the orders are directed to are located. 16 U.S.C. § 8251(b) ("Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States court of appeals for any circuit wherein the licensee or public utility to which the order relates is located."). The Supreme Court stated that "[t]his statute is written in simple words of plain meaning and leaves no room to doubt congressional purpose and intent. It can hardly be doubted that Congress, acting within its constitutional powers, may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be

had." *Id.* at 335–36, 78 S.Ct. 1209. In that same regard, the District of Columbia Circuit has stated that

> [i]t is axiomatic that 'Congress, acting within its constitutional powers, may freely choose the court in which judicial review [of agency decisions] may occur,' quoting *City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C.Cir.1979) (citing *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958)), [and] *[i]f Congress makes no specific choice of this type in the statute pursuant to which the agency action is taken, or in another applicable to it, (citation omitted), then an aggrieved person may get … review in federal district court pursuant to .the general 'federal question' jurisdiction of that court.*

*Five Flags Pipe Line Co. v. DOT*, 854 F.2d 1438, 1439 (D.C.Cir.1988) (emphasis added). Therefore, without clear language in the Revitalization Act regarding where review authority of decisions of the U.S. Commission is to occur, this Court is unwilling to presume that Congress intended to invest the Superior Court with jurisdiction over decisions rendered by the U.S. Commission. To do so would ignore the axiom that judicial review of decisions of a federal agency are considered "federal questions" and are properly cognizable only in the federal courts. *See Califano*, 430 U.S. at 105, 97 S.Ct. 980; *City of Beloit*, 248 F.3d at 654.

This conclusion is consistent with what other members of this Court have done in cases involving § 2241 habeas corpus petitions following the enactment of the Revitalization Act, where the Commission has been a party. For example, most recently in *Owens v. Gaines*, 219 F.Supp.2d 94, ——, 2002 WL 2002853, at *3–4 (D.D.C. August 29, 2002), as discussed above, Judge Sullivan addressed the government's position for mandatory exhaustion of District of Columbia habeas corpus remedies prior to seeking relief in this Court in the context of the U.S. Commission's supervision of a petitioner's parole. In *Owens*, the Court found "the United States' exhaustion argument ignore[d] the fact that D.C. courts do not have 'concurrent powers' with respect to challenges to U.S. Parole Commission activity. The D.C.Code actually precludes the filing of habeas petitions in Superior Court that challenge the actions of federal officials." *Id.* (citing D.C.Code § 16–1901). In *Allston v. Gaines*, 158 F.Supp.2d 76 (D.D.C. 2001), Judge Friedman stated in a footnote that "[a]s a threshold matter, the government argues that this case should be dismissed because petitioner has failed to exhaust his remedies in the Superior Court of the District of Columbia. The Court finds this argument unpersuasive and instead considers the [petitioner's] petition on the merits." *Id.* at 78 n. 1 (citing 28 U.S.C. § 2241); *Blair–Bey*, 151 F.3d at 1046–47). Also, in *Stokes v. United States Parole Comm'n*, No. Civ.A. 00–3075, 2002 WL 193336, *1 (D.D.C. Feb.4, 2002), Judge Kessler, under circumstances where the petitioner failed to exhaust his local court remedies, stated, in dicta, that while the petitioner was not required to file a writ of habeas corpus because he did not seek actual release from incarceration, but only challenged the date of his scheduled parole hearing, even if the petitioner's claim was an "action as a general habeas corpus petition under District of Columbia law, it would appear that such petitions *must* be filed in this Court." *Id.* (emphasis in the original) (citing D.C.Code § 16–1901(b) ("Petitions for writs directed to Federal officers and employees shall be filed in the United States District Court for the District of Columbia").

Therefore, because this Court finds that the petitioner's challenge of his current

detention necessarily requires that a decision of a federal entity be scrutinized, this Court is compelled to conclude that it is the proper forum to exercise jurisdiction over this particular habeas corpus petition. The Court finds that despite the aforementioned anomaly created by the Revitalization Act, it must exercise jurisdiction in this case to afford the petitioner a forum where he has the opportunity to vindicate the challenge to his detention. As the Supreme Court has stated,

> [t]he scope and flexibility of the writ [of habeas corpus]—its capacity to reach all manner of illegal detention—its ability to cut through barriers of form and procedural mazes—have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.

*Harris v. Nelson*, 394 U.S. 286, 291, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). Only this Court has the capacity and flexibility to reach the core of the due process challenge being raised by the petitioner.[11]

### (2) *The Petitioner's Due Process Allegation*

■ Having concluded that this Court should exercise its concurrent jurisdiction in this petition, it will now turn to the petitioner's challenge to his detention to consider whether he has been deprived of a constitutionally protected liberty interest. The Court undertakes a review of a habeas corpus petition in the context that, "[t]here is no higher duty of a court, under

our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law." *Harris*, 394 U.S. at 292, 89 S.Ct. 1082. The analysis requires the Court to first determine whether the petitioner's claim implicates the denial of a liberty or property right to which he has a legitimate entitlement to under the Constitution. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). It is well settled that an individual has a due process interest in the revocation of his parole because he is being deprived of his liberty. *Id.* Thus, because the petitioner is challenging the revocation of his parole, he has alleged a violation of a constitutionally protected liberty interest. The Court must now address whether he was deprived of his liberty without due process.

■ The seminal case discussing what process is due a defendant at a parole revocation hearing is the Supreme Court's decision in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In *Morrissey*, the Court stated "that the revocation of parole is not part of criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Id.* at 480. The Court noted that "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty

---

11. The reality of this conclusion is apparent from the respondents' counsel's non-commitment during the hearing as to whether it would decline to take action in this Court to preclude the petitioner's release if ordered by the Superior Court. Although not expressed by counsel, this Court believes it is likely that the Superior Court's authority to order release would be challenged as the result of the U.S. Commission's involvement in the petitioner's current detention.

properly dependent on observance of special parole restrictions." *Id.* Chief Justice Burger, writing for the majority, stated that the Court's

> task is limited to deciding the minimum requirements of due process. They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey,* 408 U.S. at 488–89, 92 S.Ct. 2593. Moreover, it is clear that if a parole authority's decision was "either totally lacking in evidentiary support or [was] so irrational as to be fundamentally unfair, then the revocation of [the petitioner's] parole indeed would violate due process." *Duckett v. Quick,* 282 F.3d 844, 847 (D.C.Cir.2002) (citing *Douglas v. Buder,* 412 U.S. 430, 432, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973) ("holding that revocation of probation 'totally devoid of support' violates due process")).

 This Court's review of the Commission's decision to revoke the petitioner's parole is limited to determining whether there was an "abuse of discretion" by the Commission, or, in other words, whether there was a "rational basis" in the record to support such a determination by the Commission. *Allston,* 158 F.Supp.2d at 79 (citing *Gambino v. E.W. Morris,* 134 F.3d 156, 159–60 (3d Cir.1998); *Iuteri v. Nardoza,* 732 F.2d 32, 37 (2d Cir.1984));

*Solomon v. Elsea,* 676 F.2d 282, 290 (7th Cir.1982). The evidentiary standard that guides the Commission's parole determination is whether the petitioner has committed a violation of a parole condition by a preponderance of the evidence. *Allston,* 158 F.Supp.2d at 80 (citing 18 U.S.C. § 4214(d); 28 C.F.R. § 2.105(a)). This Court must therefore review the record and the evidence relied upon by the Commission in making its decision to revoke the petitioner's parole. *Solomon,* 676 F.2d at 290.

 The Commission's finding that the petitioner was in constructive possession of the weapon and the drugs found in the vehicle can be summarized by its proposition that because the petitioner was present in a vehicle in which contraband was discovered he was guilty of constructively possessing those items. This conclusion is legally flawed. While the Commission's hearing examiner concluded that the petitioner "had constructive possession of both gun and drugs while he was in that car, and the testimony that ... the Commission has or that I heard, put him in the car with the gun and the drugs, and that is constructive possession," Tr. at 70, in this jurisdiction it is a fundamental axiom of the doctrine of constructive possession that mere presence alone is not enough. *United States v. Richardson,* 161 F.3d 728, 731–32 (D.C.Cir.1998) ("Generally, neither 'mere proximity' to nor 'mere knowledge of the presence' of contraband alone is enough to prove constructive possession." (citations omitted)); *Bernard v. United States,* 575 A.2d 1191, 1195 (D.C.1990) ("To establish constructive possession it is not sufficient for the prosecution to show that [the individual was] within reach of the drugs; mere proximity to an illegal item is not enough."). To prove constructive possession, it must be adduced that the petitioner not only knew that the contraband

was in the vehicle, but that he had "the ability to exercise knowing 'dominion and control'" over the contraband. *Richardson,* 161 F.3d at 731 (citations omitted); *see Rivas v. United States,* 783 A.2d 125, 129 (D.C.2001) (*en banc*) (requiring both knowledge and "both the ability and the intent to exercise dominion or control over it."). In a recent *en banc* decision issued by the District of Columbia Court of Appeals, the court made it clear that mere presence in the passenger compartment of a vehicle in proximity to exposed drugs in a car, without more, is insufficient to prove the requisite intent to exercise dominion or control over the contraband. *Id.* at 131. Thus, even if an individual knows that there is contraband nearby, this is not enough to prove constructive possession, as "[t]here must be some action, some word, or some conduct that links the individual to the [contraband] and indicates that he had some stake in them, some power over them. There must be something to prove that the individual was not merely an incidental bystander." *Rivas,* 783 A.2d at 130 (quoting *United States v. Pardo,* 636 F.2d 535, 549 (1980)).

 Here, the evidence that the hearing examiner had presented to him was that the petitioner's presence in the front passenger seat of a vehicle owned by the driver, with drugs discovered inside of a closed center console that separated the two occupants and also in a jacket that was in the rear seat of the vehicle. Also recovered in the vehicle was a gun that was discovered in "the map hutch behind the seat that [the petitioner] was sitting in." Tr. at 16–18. None of the contraband was exposed and therefore there is no evidence that the petitioner even knew that there was contraband inside of the vehicle. Furthermore, even if the contraband had been in plain view of the petitioner, the District

of Columbia Circuit's opinion in *Richardson* and the District of Columbia Court of Appeals' opinion in *Rivas* demonstrates that the commission of a criminal offense based on constructive possession requires that a person must exercise some level of control or dominion over the contraband. On this record, the evidence proves nothing about whether the petitioner possessed the contraband and surely does not satisfy even the relaxed standard of proof that applies to parole decisions. Thus, this Court must conclude that there is no rational basis in the record for concluding that the petitioner was in constructive possession of the contraband located in the vehicle and therefore the Commission's finding on that point was clearly arbitrary and capricious.

### III. *Conclusion*

Having found that this Court must exercise its jurisdiction to entertain the petitioner's habeas corpus petition, the Court finds that the U.S. Commission inappropriately "established petitioner's reparole guidelines under 28 C.F.R. § 2.81 based only upon the finding that petitioner has possessed with intent to distribute over 26 grams of free-based ... cocaine." Opp'n at 6. Therefore, the Court must grant the petitioner's petition for a writ of habeas corpus and will order that the petitioner be forthwith released.[12]

### *ORDER*

Upon consideration of the Petitioner's Writ of Habeas Corpus, and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby,

**ORDERED** that the petitioner's petition for a writ of habeas corpus is **GRANTED;** and it is

12. An Order consistent with the Court's rul-

ing accompanies this Memorandum Opinion.

**FURTHER ORDERED** that the Warden of the Correctional Treatment Facility shall immediately release the petitioner.